JONES v. MAYOR AND ALDERMEN OF THE CITY OF LITTLE ROCK.

MANDAMUS—*injunction—who may ask this relief.* Where the complainant seeks to enjoin an act, the commission of which would not affect his private interests, there is *no case* for equitable interposition.

Equity will not hear an appeal for an injunction to cut off criminal acts of a body politic, where private rights are not involved. To warrant equitable interference, the injury must be *great* and *irreparable.*

Where J. seeks to enjoin the city of Little Rock from issuing bonds, to circulate as money, and applies to this court for a mandamus to compel the Chancellor of Pulaski county to reinstate an injunction for that purpose, but does not show that injury might result to him, personally, no case is presented for equitable interference.

CITY SCRIP—*power to issue.* The act of December 21, 1864, amending the city charter of Little Rock, expressly prohibits the city from issuing bills, bonds or notes, to circulate as money.

No city in this State has authority to issue bills, bonds or notes intended to circulate as money.

A *provision* of a city charter empowering the city to issue bonds in payment of, or as security for, debts, does not confer authority to issue bills, bonds or notes to circulate as money.

*Appeal from Pulaski Chancery Court.*

Hon. T. D. W. YONLEY, Chancellor.

RICE & BENJAMIN and WATKINS & ROSE, for plaintiff.

The law against issuing change tickets (*Gould's Digest,* p. 244) has never been repealed or modified.

The Chancellor based his decision, on a similar case, on the ground that, the bills being wholly *void,* no injunction should issue.

But they are not *void. Van Horne v. State,* 5 *Ark.,* 351. And if they were *void* the injunction ought to issue any way. *Hamilton v. Cummings,* 1 *Johnson's Chy. R.,* 520.

GALLAGHER & NEWTON, and W I. WARWICK, for defendants.

No power is vested in the Supreme Court to grant a mandamus, to compel a Chancellor to grant an injunction, by the Code. *Chap. IV., Civil Code, pp.* 99 *to* 106. Compare, also, *sections* 297, 299, 305, 309, 310.

The omission of this power is evidently intentional. The plaintiff does not show any damage that has been, is now being, or is likely to be done, by the issuance of this money. Injunctions should be used cautiously, and only in cases of great necessity. *Atty. Genl. v. Utica Ins. Co.,* 2 *Johns. Chy.,* 378. And, unless the plaintiff shows some such damage, this strong power can not be exerted in his behalf. *Morse v. Maclias Water Mill Co., &c.,* 42 *Maine,* 123; *Watrous v. Rodgers,* 16 *Texas,* 410; *Doolittle v. Supervisors of Boone County,* 18 *N. Y.,* (4 *Smith,*) 155, and cases cited; *Susquehanna Bank v. Supervisors of Boone County,* 25 *N. Y.,* (11 *Smith,*) 312.

If the bonds issued are, as claimed by plaintiff, mere nullities, a court of chancery would be performing a senseless and useless act to restrain that which is of no force.

Plaintiff's claim is based on the chapter in Gould's Digest, page 244, forbidding the issuance of " change tickets," and also the act of April 9, 1869, in new Digest.

Under this law, all persons whose names appear on such tickets are *pecuniarily* and *criminally* liable. *Sections* 1, 5, 6, 9, 10, *&c.* Then plaintiff's remedy, to stop the injury complained of, does not lie in injunction. 18 *N. Y. (supra);* 2 *Johns. Ch. (supra)*; *Attorney General v. Bank of Niagara,* 1 *Hopkins Ch.,* 354; *Smith v. State,* 21 *Ark.,* 294; *Ketchum v. Buffalo,* 4 *Kernan,* (14 *N. Y.,*) 356; *Davis v. Mayor of New York, ib.,* 506; *Rosevelt v. Draper,* 7 *Abb.,* 108 ; *People v. Fowler, ib.,* 158; *Kaft v. School Trustees,* 16 *Howard,* (*N. Y.,*) 140.

If the city council had abused its power in the issuance of these warrants, and the same was shown on the bill, a motion for injunction might then be entertained, but not otherwise.

*Davis v. Mayor, &c.,* 1 *Duer,* 451; *People v. Sturdivant,* 9 *N. Y.,* (5 *Seld.,*) 263.

GREGG, J.

It appears that the plaintiff, on the 10th of May, 1869, presented to the Chancellor of Pulaski county, at chambers, his complaint for an injunction against the defendants, to restrain them from issuing bonds, notes, or city treasury warrants, intended to circulate as currency.

The Chancellor made a temporary restraining order, which he afterwards recalled, but he restrained the defendants for fourteen days, when the application was set for hearing in court. The bill then being presented, the court ordered the temporary restraining order dissolved, and refused to enjoin the defendants until the final hearing of the cause, ordering them restrained, conditionally, for twenty days.

The plaintiff has filed his motion and petition in this court for a mandamus, to compel the Chancellor to reinstate and continue such restraining order until the final hearing of the cause.

The plaintiff's original petition is in behalf of himself, and all other tax-payers of said city; and he alleges that he owns a large amount of property in the city; that said mayor and aldermen have procured plates, engraved for notes, or bonds, which they are about to issue upon the credit of the city, and which are designed to circulate as currency, or money; that, for more than a year past, such bonds, or notes, have been issued by the city, under the authority of the council, and have circulated as money, being a common medium of exchange within the city; that the council have a large amount of such notes, or bonds, of denominations under thirty dollars, which they will put in circulation, if not restrained, and that no vote of the people of the city has been taken authorizing the issuing of such bonds; and that the council are about to issue and circulate the same on their own motion; and he prays that they may be enjoined.

The petitioner seems to be prosecuting this suit for the good of the community at large, and does not show wherein any individual injury will result. There is no allegation that he will be compelled to accept such bonds, or notes, for any city liability, or that he must receive such currency in trade, or suffer loss by refusing to do so.

However commendable it may be in an individual to carry on a suit for the whole community, in the result of which he has no interest over any other member of that community, to urge the perpetuation of an injunction for the common good of the city, such is not a fit case for equitable interposition. Courts are authorized to lend their aid, by these extraordinary writs, only in cases where personal injury is likely to result; and it is a well established doctrine in equity, that such applications can not be favored, where the injury is not great, or irreparable.

In the case of the Trustees of Louisville against Gwethmay, *et al.*, in which an alleged illegal tax was about being collected, the Chief Justice of Kentucky said: "There is obviously no ground for the interposition of a court of equity in this case. If the trustees had authority to levy the tax, they might, no doubt, rightfully collect it; and if they had no such authority, and should attempt to coerce the payment of the tax by distress, they would be guilty of a wrong, for which a court of law would afford an adequate remedy.

"It is true a court of equity will sometimes interfere to prevent a wrong; but that is done, in general, only where the wrong is in its nature irreparable." 1 *A. K. Marshall,* 554; *Gilbert v. Mickel, Saunders Ch. Rep.,* 362; *The Corporation of the City of New York v. Moses, et al.,* 6 *Johnson's Ch. Rep.,* 49.

In the case of *Ketchum v. the City of Buffalo,* 14 *N. Y.,* 371–2, wherein the complainant, as a tax-payer, alleged he would be injured by being subjected to pay taxes to meet interest on an alleged illegal city bond, the court presents the following grounds:

The plaintiffs claim the right to maintain this action, for the reason that they are owners of real estate subject to taxation,

and are each of them tax-payers in the city of Buffalo, to an amount exceeding one hundred dollars annually; and that an attempt to collect the tax to pay the interest in question, would lead to and cause a multiplicity of suits. The only title made to the relief demanded is: should the common council be allowed to assess and levy a tax to pay the interest of an indebtedness for city purposes illegally contracted? As is alleged, they, in common with all other tax-payers of the city, may be subjected to the payment of an infinitesimal part of such tax. They complain of the invasion of no private rights; they ask not the enforcement or protection of such a right, nor the redress or prevention of a wrong done or threatened to them, as private persons, in their individual character; they complain that a great public wrong has been done; their municipal government has been unfaithful in discharge of a public trust confided to it; it has usurped and exercised powers neither in terms or by implication granted by the sovereign authority. * * * It has, without authority, incurred a city debt, and they, as corporators, demand aid of the judicial arm of the State to redress the public wrong. * * * It seems quite clear the only remedy to be exerted by the corporation, as such, is to remove, when opportunity presents, the unfaithful incumbents of governmental power.

They can make no case of private injury to be redressed, or private right to be enforced or protected. Any right they have, is as members or constituency of a local government, and which is common to all, and the wrong to be redressed is of a public nature, exclusively pertaining to a public duty. Parties to an action must show they are entitled to the relief prayed, or their complaint will be dismissed.

In this action Jones alleges he is a property holder and tax-payer in Little Rock; that the city council have transcended and again are about to transcend their authority; intimating, but not positively asserting, that thereby they will injure him, and all other holders of taxable property; presenting the same features, in the main, but not as strong a

case as the one referred to; and we concur in the law and reasoning of the court there laid down.

It is urged by the counsel that the city bonds are being issued without any authority of law, and not merely so, but in palpable violation of a positive statute. We certainly know of no law authorizing this or any other city, in this State, to issue bills, bonds or notes, intended to circulate as currency or money, and it is very clear that no provision in the charter of any city or town empowering its corporate officers to make or issue bonds in payment of debts, or as security for money borrowed, can be legitimately construed to embrace or authorize the issuing of small bonds, intended to be circulated as money, to be used as a medium of exchange in the community; but, take it for granted that the city is foisting upon the community an illegal and unauthorized currency, the plaintiff's case is none the better thereby. In case of *Craig, et al., v. State of Missouri*, 4 *Pet.*, 436, Chief Justice MARSHALL said: "It has long been settled that a promise, made in consideration of an act which is forbidden by law, is void." If such are issued without authority of law, then the city is not bound to redeem them. If issued in violation of a positive statute they are void, and the taxable property of the citizens can not be held liable for their redemption.

The statutes of the State, referred to by counsel, (*Gould's Dig.*, *ch.* 29,) makes the issuance, signing, countersigning, indorsing or circulating of small notes, bills, bonds, change tickets, checks or shinplasters, not only illegal but criminal; and persons, whether officers of corporations, cities or towns, or as private persons, who issue, sign, or countersign, &c., are not only liable to be sued and suffer a recovery of the nominal value of such notes, &c., but each one so engaged is liable to indictment and criminal prosecution.

By act of General Assembly, of December 21, 1846, session acts, sec. 3, p. 110, amending the charter of the city of Little Rock, it is provided: "The mayor and aldermen shall not have power, under any circumstances, to issue any change

tickets or other evidences of debt, to circulate as currency." It will be seen, by the careful wording of this act, that the Legislature fully intended to disallow and prohibit the city from creating a circulating medium of exchange, by the use of her credit, in any manner whatever. The corporation is not only prohibited from issuing notes, bills or change tickets, but in positive and express terms forbidden to issue, under any circumstances, "other *evidences* of *debt* to *circulate* as a *currency.*"

Had this statute been drawn with the sole view of inhibiting the executing of small bonds in payment of the current expenses of the city, &c., so the same could be used in trade as a medium of exchange, could more perspicuous terms have been used? We think not.

Parties aggrieved must see that the proper laws are enforced, and the failure of officials in their execution affords no excuse to prostitute the high powers of a court of chancery. Such court can not hear an appeal for injunction to cut off void and criminal acts of a body politic, or its officers, when private rights are not involved. 1 *Eden on Inj., p.* 66, *note* 1.

We are of the opinion that the illegal and improper conduct alleged against the defendants, however important to the citizens, is not a fit case for relief by injunction. The motion for mandamus is refused.