70    215
88    476

MARTIN-ALEXANDER LUMBER COMPANY v. JOHNSON.

Opinion delivered February 15, 1902.

1.  CURRENCY—MERCHANDISE CHECKS.—Checks payable in goods, issued by an employer to its employees and payable at its store, do not come within Sand. & H. Dig., § 18, forbidding the creation or circulation of "any note, bill, bond, check or ticket purporting that any money or bank notes will be paid to the receiver, holder or bearer, or that it will be used as a currency or medium of trade in lieu of money;" the statute being intended to prevent any attempt to create a private circulating medium or currency. (Page 218.)

2.  ACCORD—WHEN NOT SATISFIED.—Where an employer paid the wages of its employees by issuing to them checks payable in goods at its store, such payment constitutes an accord without satisfaction if the wages were already due, and the acceptance of the checks would not bar an action by the employees, or their assignee, for the amount due them as wages. (Page 220.)

3.  ACCORD—WHEN SATISFIED.—Where an employer paid the wages of its employees before due by issuing checks to them payable in goods at its store, the acceptance of the checks would constitute an accord and satisfaction, and bar the employees and their assignee from recovering the amount of such wages in money. (Page 221.)

4.  ASSIGNMENT—MERCHANDISE CHECKS.—Checks payable in merchandise are assignable under Sand. & H. Dig., § 489, providing that "all bonds, bills, notes, agreements and contracts in writing for the payment of money or property, or for both money and property, shall be assignable." (Page 221.)

Appeal from Pike Circuit Court.

WILL P. FEAZEL, Judge.

Reversed.

STATEMENT BY THE COURT.

Appellee obtained judgment against appellant for $475, the sum of numerous checks in denominations of 5 cents, 10 cents, 25 cents, 50 cents, and $1, given by appellant to its employees in payment of their wages. The form of the checks is as follows:

"Martin-Alexander Lumber Company: Deliver to bearer at our store five cents' worth of merchandise. [Signed] E. D. Martin, President." The checks were made of pasteboard, were round, and about the size of a silver dollar. They had stamped across their face in red ink the words, "Not redeemable in cash."

The appellee says that before bringing suit he demanded of appellant the payment of the checks sued on, and that appellant refused to cash them. There was no demand for appellant to pay the checks in merchandise. He got the checks in payment for goods sold to appellant's employees.

The evidence was substantially as follows: George Sewer testified for plaintiff: "I was bookkeeper for defendant three years. The company hired its hands by the day; and at night, if they wanted anything, checks were issued to them in any amount not to exceed what was due them on the books. When these checks were taken up at the store in exchange for goods, they were returned to me and reissued. We kept no register of when checks were handed out. We simply charged the amount on the account of the man to whom they were delivered. The checks were issued in order to save bookkeeping. The company had a regular pay day on the 15th of each month, and they paid in money only on that day. The company never redeemed these checks in cash. When a party took them he had to trade them out at the store. If an employee would wait until the 15th, he would get cash for all that was due him. The company did not make an enormous profit on goods it sold to its employees. Its average profit was about seventeen and a half per cent."

D. L. Bowen: "I worked for the company, and had to take checks for what they owed me. I was forced to take the checks because they would not pay the money, and I had to have something to live on. We had to pay from 20 to 30 per cent. more at

the company's store than we could buy the same things for from other merchants in the same town. I remember I had to pay 75 cents for a sack of flour, when the same flour was selling at other stores for 55 cents. I worked for the company year before last. I could have got the money on the 15th of the month. We knew that when we took the checks we would have to pay at least 20 per cent. more for the goods than we would have to pay at other stores for cash, but we had to take the checks or wait until the 15th for our money."

R. G. Atkins testified: "I worked for the company. By waiting until the 15th, I could have got cash, but my circumstances were such that I was forced to take checks. We were forced to pay at the company's store 20 per cent. more than the goods were selling for at other stores."

W. C. Clayton testified: "I am depot agent at Pike City. These checks were taken by other merchants for goods at a discount. People in the country also took them for produce. They were at a discount of from 15 to 20 per cent."

John Read testified: "I worked for the company. By waiting until the 15th, I could get the money; but I had to live on my daily wages, and so had to take checks. I soon found that I was paying more at this store than at others. I understood when I took the checks that they would not be redeemable in cash."

A. V. Alexander testified as follows for defendant: "The checks sued upon were orders upon the store of the Martin-Alexander Lumber Company for goods, and were stamped across their face in red ink, "Not redeemable in cash," and when they were issued notices were posted in the store of the company and at the company's mills, setting forth that these checks were given to each employee if he wished his pay before pay day; but that on the 15th of the month they would be paid in cash. This plan of doing business was known to all the company's employees, and was satisfactory to them, so far as I know. The plaintiff is a competitive merchant in the town, who took the checks in payment for goods. The company has offered, and is now willing, to redeem these checks in goods according to their terms. The company made no exorbitant profit on the sale of its goods upon these checks. Its net profits from the store were less than 20 per cent. The competitive merchants would necessarily have to offer less than the company's prices in order to get the business of the company's

employees, and so might not be able to make a reasonable profit; but that was no fault of the company. No employee has ever had checks forced on him, or lost his position with the company because he preferred to wait until the pay day and get the cash. No employee was ever forced to take checks or offered checks unless he asked for them. The checks are not redeemable in money. We take them up in merchandise according to their tenor."

Captain Hughes testified: ."I have worked for the defendant company for three years. It always paid promptly. I took checks, and bought with them anything I wanted."

*Rose, Hemingway & Rose,* for appellant.

The payment of the wages before they are due is a sufficient consideration to support a contract to accept payment in another way than money. 2 Ark. 209; 33 Ark. 572; 24 Ark. 197, 201. In such a case the substituted agreement is solvable, not in money, but, according to its tenor, in goods. 96 U. S. 366; 111 U. S. 62; 16 Fed. 360; 19 Fed. 723. Such contracts are valid, even when forbidden by statute. 113 Pa. St. 431, 437, 6 Atl. 354; 115 Mo. 307, 22 S. W. 350; 33 W. Va. 179, 10 S. E. 285; 33 W. Va. 188, 10 S. E. 288; 141 Ill. 171, 31 N. E. 395; 59 Pac. 341. The subsequent agreement and the acceptance of the orders or checks is valid as an accord and satisfaction. 12 Tex. 336; 2 Cal. 494; 12 Neb. 502; 2 Ark. 209; 33 Ark. 33; 35 Ark. 75; 53 Ark. 116.

*C. C. Hamby,* for appellee.

Appellants already owed in cash to appellee the amount made payable in goods by the checks, and therefore the agreement to accept goods was without consideration. Even if the acceptance of the check be an accord, it was executory, and not binding. 2 Ark. 209; *id.* 45; 75 N. Y. 574, 31 Am. Rep. 491.

WOOD, J., (after stating the facts.) 1. The checks sued on do not come within any of the provisions of chapter 18, Sand. & H. Dig. The design of that chapter was to prevent the creation or circulation by private individuals of "any note, bill, bond, check or ticket purporting that any money or bank notes will be paid to the receiver, holder or bearer, or that it will be received in payment of debts, or to be used as a currency or medium of trade in lieu of money." Also to prevent the issuance by "any city, town or corporation whatever of any small bills or notes, commonly

denominated change tickets or shinplasters." "Bills and notes" are payable in money, not merchandise. They are not "bills" and "notes" if redeemable in commodities instead of money; and "bills and notes," as here used, ∎ are commonly denominated "change tickets" or "shinplasters" because they are for a small sum of money. Webster's Dict. *verbo* "Shinplaster."

The statutes are leveled against any attempt to create a private circulating medium or currency; *i. e.,* notes, bills, bonds, checks, or tickets redeemable only in the current money of the realm. *Van Horne* v. *State,* 5 Ark. 350; *Ex parte Anthony, id.* 359. In *Yeates* v. *Williams,* 5 Ark. 684, Judge Lacy said: "The legislature intended to cut up by the root all individual paper emissions of money." The statutes are *in pari materia. Van Horne* v. *State, supra.* See, also, *Smith* v. *State,* 21 Ark. 294; *Jones* v. *Little Rock,* 25 Ark. 301; *Lindsey* v. *Rottaken,* 32 Ark. 619; *U. S.* v. *Van Auken,* 96 *U. S.* 366; *Hollister* v. *Zion's Co-operative Merchantile Institution,* 111 U. S. 62; *In re Aldrich,* 16 Fed. 370; *U. S.* v. *White,* 19 Fed. 723. The form of the check or order in suit refutes the idea that it was intended to circulate as money. It was an order or check for merchandise. The bearer was specifically notified that it was "not redeemable in cash." Moreover, the proof *aliter* showed that the purpose was not to have the checks circulated as money.

The checks were issued, says the bookkeeper, "to save trouble in bookkeeping." It is true they passed by delivery into other hands than those of employees. But this was always at a discount, and the appellee himself took them for merchandise. It is doubtful whether they were ever designed to pass beyond the hands of the employer and the employee. Their circulation was necessarily localized to a very restricted territory. The case of the *Iron Mountain & Helena Railroad* v. *Stansell** differs materially from this. In that case the suit was not upon the certificates or paper, but was for money due on the original contract. Before the suit was instituted, there was a demand made upon the railroad for the payment of the certificates in freight and passage, as the certificates called for. The plaintiff tendered them in payment of freight and passage, and they were refused. The maker of the certificate was setting up their illegality. But that was not the issue. Judge Smith said: "The result of the present controversy does not de-

* 43 Ark. 275.

pend on the validity or invalidity of these transportation certificates; nor upon the question whether, if they were issued in contravention of a statute, a private corporation is obligated by law to redeem them. * * * The main question," he continues, "is therefore whether the corporation defendant owes the plaintiff money on a contract which it refuses to pay." In that case there was strict privity of contract between the plaintiff and the defendant. A portion of the contract of the railroad with the construction company was assigned to the plaintiff, with the knowledge and consent of the railroad company, and the plaintiff sued the railroad company for material furnished under that contract. It is manifest, therefore, that the court did not have before it for decision the question as to whether the certificates were in a form prohibited by law, and what the learned judge said in that respect was *dictum*. Here the suit, the right to recover, was based on the orders or checks. The holder was a party to the agreement. No demand was ever made on the lumber company for the redemption of the orders or checks in merchandise. On the contrary, the proof was that the lumber company was ready to redeem the checks in merchandise, as specified therein, at any time when called for.

2. If the wages of the employees were due when the checks were issued and received by them, then the case is one of accord but without satisfaction, and the acceptance of the check or order would be no bar to an action by them, or one standing in their right, for the money due them as wages; for it is a "general principle that accord without satisfaction is no bar to an action of debt,—that is, that accord, being a promise to confer satisfaction, must be fully and actually executed and accepted in order to be a satisfaction." "Consent of a party to accept in satisfaction, without actually receiving, does not form a valid bar to the action." *Pope* v. *Tunstall,* 2 Ark. 209; *Ballard* v. *Noaks, id.* 45.

The illustration of learned counsel is apt: "If A owes B a debt which is due, and B says that he will take A's horse in payment, B's promise is without consideration, and he may refuse to accept the horse when tendered. But if A's debt to B is not yet due, and A waives his right to delay payment, and promises to pay in something else of value, or at another time and place, which is accepted by B, in such case there is a new contract upon sufficient consideration, which is binding." *Cavaness* v. *Ross,* 33 Ark. 572; 1 Cyc. Law & Proc. "Accord and Satisfaction" pp. 323, 324.

There was evidence tending to show that the wages of the employees, although so much per day, were not due until the 15th of each succeeding month. If that were true, the agreement to pay and to accept merchandise for wages not yet due would be binding upon the parties to the contract.

In this view of the evidence, appellant doubtless presented its request for instruction numbered four, which is as follows: "4. If the jury find from the evidence that the company (Martin-Alexander Lumber Company) had established a pay day on which their employees would be paid in full in currency any amount due them for labor, and said employees elected to accept in lieu of said money at pay day these commissary checks, then said company would not be liable in money for the amount of such commissary checks so taken up before pay day." The request, although not as clear as it should have been, embodied the correct idea, and, taken in connection with the evidence, we think could not have misled the jury, and should have been given. It was certainly a question for the jury as to whether the wages were due or not when the checks were issued and accepted. We do not find that other instructions cover the question involved in the fourth request, *supra*.

3. The checks under consideration are contracts or agreements in writing for the payment of merchandise, and under section 489, Sand. & H. Dig., are assignable by delivery.

For the error indicated, the judgment is reversed, and the cause is remanded for new trial.

HUGHES and RIDDICK, JJ., did not participate.