## Dreyfus v. Roberts.

Opinion delivered May 13, 1905.

RELEASE—ACCEPTANCE OF LESSER FOR GREATER SUM.—When an agreement to discharge a debt by the payment of a smaller sum is fully executed, and such discharge is evidenced by a written receipt for the lesser sum in full satisfaction of the greater, it is a binding release.

Appeal from Lafayette Circuit Court.

CHARLES W. SMITH, Judge.

Affirmed.

S. J. Roberts brought suit in equity against S. G. Dreyfus & Company, and R. L. Searcy, their attorney, and W. H. Baker, the sheriff of Lafayette County, to enjoin them from proceeding to sell certain personal property levied upon and advertised for sale, under a certain execution issued on a judgment in favor of S. G. Dreyfus & Company against plaintiff, claiming that said judgment had been settled.

The chancellor found the following state of facts:

1. That on July 30, 1896, S. G. Dreyfus & Company obtained judgment against plaintiff for $2,006.50.

2. That, said judgment remaining entirely unsatisfied, said defendants S. G. Dreyfus & Company, sometime previous to May 30, 1900, placed. said judgment in the hands and under the control of Sprague's Collecting Agency, of Chicago, Ill., making said collecting agency the agent of the said S. G. Dreyfus & Company, and authorizing said collecting agency to compromise and settle said judgment, and so notified plaintiff.

3. That in June, 1900, said Sprague's Collecting Agency corresponded with plaintiff S. J. Roberts in reference to the judgment, and offered to accept $200 in settlement of same, to issue a receipt therefor, and to cancel said judgment.

4. That said S. J. Roberts, being financially embarrassed, procured, through his mother, Julia E. Russell, the check of Henry Moore for the sum of two hundred dollars, dated June 13,

1900, drawn on the Texarkana National Bank, of Texarkana, Tex., negotiable in form and payable to the order of the said Julia E. Russell, which check was by said Julia R. Russell, indorsed and made payable to the said Sprague's Collecting Agency, and was on the 16th day of June, 1900, by plaintiff forwarded by registered letter from Walnut Hill, Ark., to said Sprague's Collecting Agency at Chicago, Ill., and was received by said agency, and accepted in full payment of said judgment against said S. J. Roberts, and upon the 22d day of June, 1900, said agency issued to said S. J. Roberts a receipt and satisfaction in full for said claim, and stipulated that said judgment would be immediately satisfied upon the record.

5. That the check mentioned was by said agency or its correspondents or agents lost or mislaid, and said Sprague's Collecting Agency communicated with said Henry Moore, and requested of him that he, the said Henry Moore, issue and forward to said agency a duplicate check for said $200, and upon the 19th day of July, 1900, said Henry Moore issued a duplicate of the check drawn on the 13th day of June, 1900, negotiable in form and payable to the order of said Julia E. Russell, and forwarded the same to said Sprague's Collecting Agency, and said Sprague's Collecting Agency obtained the indorsement of said Julia E. Russell, or placed such indorsement of Julia E. Russell upon said duplicate check, and forwarded same to Texarkana, Tex., and same was paid by said Texarkana National Bank at Texarkana, Tex., on the 23d day of July, 1900.

6. The following is an exact copy of the duplicate check forwarded to said Sprague's Collecting Agency and received by same in full settlement and satisfaction of said judgment with the indorsements thereon:

"Texarkana, Texas, June 13, 1900.   No. 84.
"The Texarkana National Bank, of Texarkana, Texas.
"Original unpaid, pay to the order of Julia E. Russell ($200) two hundred dollars.

"HENRY MOORE."

Indorsed on back as follows:
"Pay Sprague's Collecting Agency or order.
"JULIA E. RUSSELL.

"Pay to First National Bank or order.       ·

                            "SPRAGUE'S COLLECTING AGENCY.

"Pay to the order of yourselves."

"July 21, 1900.

     "First National Bank, Chicago,

                                 "R. J. STREET, *Cashier.*"

Indorsed on face as follows:

"Paid July 23, 1900. Texarkana National Bank of Texarkana, Texas."

7. That on August 21, said Sprague's Collecting Agency acknowledged receipt of said duplicate check, and issued to said S. J. Roberts a declaration that said claim had been satisfied.

8. That neither said Sprague's Collecting Agency nor said S. G. Dreyfus & Company ever entered satisfaction of said judgment upon the record in Lafayette County, but on the 31st day of October, 1902, said defendant R. L. Searcy, as attorney for said S. G. Dreyfus & Company, indorsed upon the margin of said record a receipt for two hundred dollars as received July 16, 1900, meaning and referring to the said payment made to the said Sprague's Collecting Agency by said check drawn by said Henry Moore to the order of said Julia E. Russell.

9. That in the month of November, 1902, said S. G. Dreyfus & Company sued out an execution upon said judgment, and placed same in the hands of the defendant, W. H. Baker, as sheriff of Lafayette County, Arkansas, who proceeded to levy same upon the property of said S. L. Roberts and advertise same for sale.

The court granted a perpetual injunction, as prayed, and defendants appealed.

*Scott & Head* and *Searcy & Parks,* for appellants.

An attorney generally has no power to compromise his client's claim, or to receive anything but actual money for his client. 12 Ark. 401; 32 Ark. 74. There was no evidence of an agreement to accept a note indorsed by a third party in satisfaction of the judgment, and the complaint tenders no such issue. 48 N. Y. 224; 65 N. Y. 444; 92 N. W. 333; 25 Vt. 386; 78 Mass. 341; 20

Ill. 557; 7 Md. 108; 50 N. J. Eq. 214; 2 Strob. (S. C.), 203; 27 Cal. 611; 134 Minn. 26; 44 Ark. 347. The receipt of money alone was not sufficient to constitute an absolute relinquishment of appellants' rights. The accord must be completely executed. 75 N. Y. 574; 54 Ark. 185; 55 Ark. 369; 1 Cyc. 319; 5 East, 230; 35 Kan. 574; 54 Ark. 185; 55 Ark. 369; 1 Cyc. 319; 5 East. 230; 35 Kan. 464; 99 Mass. 1; 37 Am. Dec. 95; 52 Mo. 224; 50 N. J. Eq. 214; 138 N. Y. 231; 20 L. R. A. 785; 92 Fed. 968; 98 Pa. St. 13; 36 How. Pr. 511; 2 Pa. Dist. 497; 65 N. Y. 444.

*C. B. & Henry Moore* and *Henry Moore, Jr.,* for appellee.

The court's declarations of law are correct. 1 Am. & Eng. Enc Law, 415; 12 Ark. 149; 44 Ark. 355; 96 N. C. 177; 77 Me. 527; 127 Mass. 386; 37 Ch. Div. 406; 27 Minn. 54; 124 N. Y. 164; 2 L. R. A. 791; 91 Ind. 51; 74 Md. 15; 120 N. Y. 260. A receipt by the creditor of a less sum of money than is due is a good satisfaction of the debt. 78 Mass. 341; 2 Metc. 283; 127 Mass. 390; 140 Mass. 264; 77 N. Y. 138; 108 N. Y. 470; 124 N. Y. 164; Pollock's Pr. Contr. 164; 14 Wend. 116; 37 L. R. A. 771; 21 South. 565; 140 Mass. 261; 103 Mass. 35; 9 App. Cas. 605. Payment of less than the whole debt, if made before it is due and received in full, is a good satisfaction. 5 Litt. 49; 2 Bush, 249; 3 Hawks, 580; 29 Minn. 254; 2 Ark. 209; 45 Ark. 290; 49 Ark. 235; 54 Ark. 185; 55 Ark. 369.

HILL, C. J. In 1896 Dreyfus & Company obtained a judgment against Roberts for $1,621 and interest. In 1900 Dreyfus turned the debt, evidenced by this judgment, to a collection agency for collection, with authority to compromise. The collection agency proposed to Roberts to accept $200 in cash, if at once remitted, in full discharge of the whole debt. Roberts was living in Lafayette County, Ark. He was unable to raise the money, and applied to his mother to assist him. She did not have the money, but had credit, and borrowed two hundred dollars from a gentleman in Texarkana, who drew a check on a bank in Texarkana, Tex. This check, after proper indorsements, was accepted by the collecting agency in Chicago as a full acquittance of the debt, and it executed a receipt in full, and promised to have the judgment record satisfied, but, instead of this being done,

Dreyfus caused execution to issue on the judgment. This action started in chancery, and was transferred to the circuit court as a proceeding to quash the execution on the ground that the judgment had been paid.

The Reporter will summarize the findings of fact.

The receipt in this case was as follows:

"Dear Sir: We have your communication with inclosure as stated [which was the $200 check], and you may consider this a receipt and satisfaction in full of the account of S. G. Dreyfus & Company *v.* yourself for $1,621. We will immediately have judgment satisfied, as per your request. Very truly yours,

"SPRAGUE'S COLLECTING AGENCY,

"Per Frank M. Utt, General Attorney."

In 1602, Lord Coke, speaking for the Court of Common Pleas, said: "Pinnel brought an action of debt on a bond against Cole, of 16 pounds for the payment of 8 pounds, 10 shillings, the 11th day of November, 1600. The defendant pleaded that he at the instance of the plaintiff before the said day, scil. 1 October Anno 44, apud W. solvit querenti 5 pounds, 2 shillings, 2 pence, quas quidem 5 pounds, 2 shillings, 2 pence, the plaintiff accepted in full satisfaction of the 8 pounds, 10 shillings. And it was resolved by the whole court that the payment of a lesser sum of the day in satisfaction of a greater cannot be any satisfaction of the whole, because it appears to the judges that by no possibility a lesser sum can be a satisfaction to the plaintiff for a greater sum; but the gift of a horse, hawk, robe, etc., in satisfaction is good. For it shall be intended that a horse, hawk, or robe, etc., might be more beneficial to the plaintiff than the money, in respect of some circumstance, or otherwise the plaintiff would not have accepted of it in satisfaction. But when the whole is due, by no intendment the acceptance of less can be a satisfaction to the plaintiff; but in the case at bar it was resolved that the payment and acceptance of parcel before the day in satisfaction of the whole would be a good satisfaction in regard of circumstance of time; for peradventure parcel of it before the day would be more beneficial to him than the whole at the day, and the value of the satisfaction is not material." *Pinnel's Case,* 3 Coke, part V. p. 117*a.*

It will be noted that the doctrine that the acceptance of a lesser sum for the whole on or after due is not valid satisfaction of the whole was *obiter dictum* in this case; but this dictum of this great lawyer and jurist established the doctrine at common law that there must be some other consideration, however trivial, than cash to make a payment of a lesser sum binding as a satisfaction of the whole, notwithstanding the solemn agreement of the parties to that effect.

Sir Frederick Pollock thus states the case: "It is enough to say that the English common law stands committed to the absurd paradox that a debt of one hundred pounds may be perfectly well discharged by the creditor's acceptance of a peppercorn at the same time and place at which the one hundred pounds are payable, or of ten shillings at an earlier day or at another place, but that nothing less than a release under seal will make his acceptance of ninety-nine pounds in money at the same time and place a good discharge, although modern decisions have confined the absurdity within the narrowest limits." Pollock's Principles of Contract (1st Am. from 2d Eng. Ed.), 165.

In 1884 the Lord Chancellor, the Earl of Selborne, delivering the opinion of the judges in the House of Lords, said: "It might be (and indeed I think it would be) an improvement in our law if a release or an acquittance of the whole debt, on payment of any sum which the creditor might be content to receive by way of accord and satisfaction (though less than the whole), were held to be, generally, binding, though not under seal." *Foakes* v. *Beer,* 9 Appeal Cases, Law Reports, 605. Thus it is seen that after three hundred years' experience in England the highest court of the realm says the law would be improved by not following Lord Coke's *dictum* in the Pinnel Case.

The Pinnel case came to the Colonies, and then the Union, as part and parcel of the common law, and has generally been adhered to, though with growing reluctance and generally with criticism. In view of the expressions of the courts on the subject, it may be safely conjectured that, if presented as an original proposition to the American judiciary, it would find little, if any, support. The editors of a current encyclopedia of the law say of the rule in question: "This doctrine has been freely criticised in

most of the courts which have occasion to consider it." I Cyc. p. 321.

Notwithstanding these criticisms, except when changed by statutes, the courts most generally adhere to it. *Id.* p. 319, and cases in notes. I Am. & Eng. Enc. Law (2d. Ed.), p. 413, and notes.

While adhering to the rule, the court will not extend it "beyond its precise import," and will not inquire into the adequacy of the supporting consideration. *Hastings v. Lovejoy,* 140 Mass. 261. The court of Appeals of New York, in following the rule, said: "This rule has been criticised as unsound and unjust in cases where the lesser sum is accepted in full satisfaction of the greater" (citing cases). *McKenzie v. Harrison,* 8 L. R. A. 257.

That same distinguished court said later: "The steadfast adhesion to this doctrine by the courts, in spite of the current of condemnation by the individual judges of the courts, and in face of the demands and conveniences of a much greater business, and more extensive mercantile dealings and operations, demonstrates the force of *stare decisis.* But the doctrine of *stare decisis* is further illustrated by the course of judicial decisions on this subject; for, while the courts still hold to the doctrine of the Pinnel Case and Cumber-Wane Case, *supra,* they have seemed to seize with avidity upon any consideration to support the agreement to accept the lesser sum in satisfaction of the larger, or, in other words, to extract, if possible, from the circumstances of each case a consideration for the new agreement, and to substitute the new agreement in place of the old, and thus to form a defense to the action brought upon the old agreement." *Jaffray v. Davis,* 11 L. R. A. 710.

The court in the above case reviews many decisions where the accord was supported on various grounds, and some are interesting and amusing. The payment at York of a lesser sum than was due at Westminster is good. The payment in a check for a less sum is good. The giving of a negotiable note for the lesser sum of either the debtor or some other party is good. If the note or evidence of the debt be surrendered, it is good. If any security, however trivial, is taken, it is good. In short, "if there

is any benefit, or even any legal possibility of benefit, to the creditor thrown in, that additional weight will turn the scale, and render the consideration sufficient to support the agreement." *Jaffray* v. *Davis, supra.* Numerous other instances may be found, accepting chattels, goods, lands or anything else of less value than the debt, if it be other than what the article represents—money—will be good. See note, 1 Am. & Eng. Enc. Law (2d Ed.), pp. 414-419.

In brief, the law is, following those decisions to their end, that an executed settlement of great or small amounts for lesser sums is good when lagnappe is given, but not on account of the payment of the money and the agreement of the parties, but because of the lagnappe being given.

It was universally held at common law that a release under seal, either with or without partial payment, was a good accord and satisfaction, and took the case out of the rule. *Jaffray* v. *Davis,* 11 L. R. A. 710; 1 Am. & Eng. Enc. Law (2d Ed.), p. 415; 1 Cyc. p. 323.

The seal had magic to import a consideration. Hence a release to which a piece of sealing wax was attached was good, while the same release without the piece of wax was worthless. The distinction between sealed and unsealed instruments is almost universally abolished, and yet the conservatism of the courts has seemingly restrained them from giving now the same effect to a written release of the whole debt which such release would have had as a sealed instrument. Connecticut and Vermont have given that effect to a receipt. "The general principle laid down with regard to receipts in full has long been the settled law of this State, whatever it may be elsewhere. The receipt in this case, unless impeached for fraud or mistake, was valid, and discharged the whole debt, though given for a payment that was in itself but a part of the entire debt." *Aborn* v. *Rathbone,* 54 Conn. 444.

The rule in Vermont seems to be that a receipt for a lesser sum, purporting to discharge the whole sum, is *prima facie* a discharge of it, and is subject to attack only for fraud, mistake, and the like grounds. *Holbrook* v. *Blodget,* 5 Vt. 520; *Stephens* v. *Thompson,* 28 Vt. 77; *Ashley* v. *Hendee,* 56 Vt. 209; *Guyette* v. *Bolton,* 46 Vt. 228.

In Mississippi the court has gone much further than this, and has completely cut away from the rule in Pinnel's Case; and of it, in *Clayton* v. *Clark,* 74 Miss, 400, Chief Justice Woods, speaking for the court, said:

"The absurdity and unreasonableness of the rule seems to be generally conceded, but there also seems to remain a wavering, shadowy belief in the fact, falsely so called, that the agreement to accept, and the actual acceptance of, a lesser sum in the full satisfaction of a larger sum, is without any consideration to support it—that is, that the new agreement confers no benefit upon the creditor. However it may have seemed three hundred years ago in England, when trade and commerce had not yet burst their swaddling bands, at this day and in this country where almost every man is in some way or other engaged in trade or commerce, it is as ridiculous as it is untrue to say that the payment of a lesser part of an originally greater debt, cash in hand, without vexation, cost and delay, or the hazards of litigation in an effort to collect all, is not often, nay, generally, greatly to the benefit of the creditor. Why shall not money—the thing sought to be secured by new notes of third parties, notes whose payment in money is designed to be secured by mortgage, and even negotiable notes of the debtor himself—why shall not the actual payment of money, cash in hand, be held to be as good consideration for a new agreement, as beneficial to the creditor as any mere premises to pay the same amount, by whomsoever made and howsoever secured? And why may not men make and substitute a new contract and agreement for an old one, even if the old one calls for a money payment? And why may one accept a horse worth one hundred dollars in full satisfaction of a promisory note for one thousand dollars, and be bound thereby, and yet not be legally bound by his agreement to accept nine hundred and ninety-nine dollars, and his actual acceptance of it, in full satisfaction of the one thousand dollar note. No reason can be assigned, except that just adverted to, and this rests upon a mistake of fact. And a rule of law which declares that under no circumstances, however favorable and beneficial to· the creditor, or however hard and full of sacrifice to the debtor, can the payment of a less sum of money at the time and place stipulated in the original obligation, or afterwards, for a greater sum, though

accepted by the creditor in full satisfaction of the whole debt, ever amount in law to satisfaction of the original debt, is absurd, irrational, unsupported by reason and not founded in authority, as has been declared by courts of the highest respectability, and of last resort, even when yielding reluctant assent to it. We decline to adopt or to follow it."

The first appearance of the rule in Pinnel's Case in Arkansas was in *Pope* v. *Tunstall,* 2 Ark. 209. The court adhered to the doctrine, but pointed out numerous exceptions to it; if the accord was at a different place; the payment in a chattel, payment of less sum by a third person, mutual promises entering into the agreement, etc. The court quoted this critcism: "That there was more nicety than good sense in some of the cases on this subject; that accords are favored in law, and therefore ought not to be too rigorously expounded." In *Cavaness* v. *Ross,* 33 Ark. 572, the rule originating in Pinnel's Case was quoted from text writers, followed and applied.

In *Reynolds* v. *Reynolds,* 55 Ark. 369, a statement of the rule by Lord Ellenborough in *Fitch* v. *Sutton,* 5 East, 230, is quoted and followed. In *Gordon* v. *Moore,* 44 Ark. 349, there was, while recognizing the old rule, a practical breaking away from it. Moore executed a release in consideration of $450 of a judgment for $2,993.20, and authorized the clerk to enter satisfaction. The release recited: "Witness my hand and seal," but bore no seal, and was executed in 1882, after the distinction between sealed and unsealed instruments was abolished. (Const. 1874. sch. 1) Judge Eakin said: "It would be hard and unreasonable if a creditor, pressed for money, might not say to an embarrassed or reluctant debtor, 'Pay me a part, and I will release the balance.' He is cut off from doing that, in many cases, by the rule as it now stands, but the rule is a hard one, based upon purely technical reasoning. It is hedged in with many exceptions." The result reached was thus stated: "We conclude, therefore, that an agreement by a creditor to accept a smaller sum in satisfaction of a debt, carried into execution by a receipt of the money, and the execution of a formal and positive instrument of release, with all other acts essential to an absolute relinquishment of his right, is a valid and irrevocable act." Thus it is seen *Gordon* v. *Moore* recognized and sustained a written

release not under seal, and practically placed this court in line with Connecticut and Vermont, which accord such effect to a receipt in full.

In *Heaslet* v. *Spratlin*, 54 Ark. 185, a parol release, sustained alone by the evidence of the party claiming it, was held not to be an accord and satisfaction; the court merely referring to *Gordon* v. *Moore*. The question then becomes important to determine what constitutes a release.

Mr. Beach says: "The proper words of a release are *remise, release, quitclaim and acquit*. Any expressions, however, which denote the intention of the one party to discharge the other are sufficient. 1 Beach, Modern Contracts, § 460.

The receipt of a given sum in full satisfaction of a larger one certainly conveys the intention to discharge the party of the debt thus expressly stated to be discharged as well as the words "remise, release, quitclaim and acquit." The release in *Gordon* v. *Moore* did not use these technical terms, but "released said Childress from any and all liability" on the judgment, and authorized its satisfaction.

Mr. Daniel says: "A release is technically an instrument under seal, the seal importing the consideration. But the release of a party to a bill or note by any agreement, upon a valuable consideration, is as effectual as if made under seal." 2 Dan. Neg. Ins. § 1290. The consideration fictitiously imported to the release by the wax affixed to the name no longer exists; but this court enforced a release without it, thereby recognizing that a written release was valid without the seal. When a receipt and release, in this respect, amount to exactly the same thing, evidencing a discharge by one party of the other, it is useless to preserve a distinction without a difference. Business and commercial affairs adjust themselves along practical and not technical lines. The court might well place its decision under the facts in this case on some of the numerous exceptions to the doctrine of the Pinnel Case, but it prefers to call a halt in refining away a rule "which has been more honored in the breach than the observance." It is therefore held that when an agreement is fully executed to discharge a debt by the payment of a smaller sum, and such discharge is evidenced, as it usually is, in practical business affairs,

by a written receipt for the lesser sum in full satisfaction of the greater sum, it is "a valid and irrevocable act."

This case does not present the question whether a parol release fully proved by clear and satisfactory evidence, carried into execution to receiving the payment, would be valid, and a discussion of it would be merely multiplying *obiter dicta.*

The judgment is affirmed.

BATTLE, J., and McCULLOCH, J., dissent.