MARTIN *v.* STATE EX REL. SALINE COUNTY.

## Opinion delivered June 28, 1926.

1. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.— A finding of fact by the chancellor will be sustained on appeal when not against the preponderance of the testimony.

2. COUNTIES—AUTHORITY OF COUNTY COURT.—Under the Constitution, the county court is the general fiscal agent of the county, and has power to do all things necessary to the preservation of its funds.

3. COUNTIES—POWER TO ISSUE BONDS.—Constitutional Amendment No. 11, authorizing county courts to issue bonds to secure the indebtedness outstanding at the time of its adoption, is self-executing, and the county court need not await the passage of an enabling act to order a sale of bonds.

4. COUNTIES—AGREEMENT OF JUDGE TO ISSUE BONDS.—Where county warrants were worth not exceeding 60 cents on the dollar, an agreement of the county judge with one owning a considerable amount of such warrants to issue bonds and redeem the warrants held and to be acquired by the other, *held* supported by a sufficient consideration.

5. FRAUDS, STATUTE OF—ORAL AGREEMENT—PART PERFORMANCE.— Purchase by a dealer of county warrants and issuance of bonds to pay same, in accordance with an oral agreement for redemption of such warrants, *held* a sufficient part performance to take the agreement out of the statute.

6. EQUITY—JURISDICTION—MULTIPLICITY OF SUITS.—Equity *held* to have jurisdiction to determine rights of a dealer in county warrants relating to numerous warrants, which might involve a multiplicity of suits, if resort were had to law.

7. INJUNCTION—PAYMENT OF PUBLIC MONEY.—Injunction at the instance of a citizen to prevent payment of more for county warrants than a dealer in such warrants was entitled to under an agreement with the county judge, *held* to present a proper case for equitable jurisdiction.

Appeal from Saline Chancery Court; *W. R. Duffie,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

The State of Arkansas, on the relation of Saline County, brought this suit in equity against A. V. Martin and George H. Ramsey as treasurer of Saline County, to enjoin the county treasurer from returning to Martin

certain county warrants, and praying that Martin be required to accept the price for said warrants which had been agreed upon between him and the county judge of Saline County in order to induce the county judge to issue bonds in payment of said warrants.

Martin defended the suit on the ground that he did not make such an agreement, and upon the further ground that any such agreement would be void because there was no consideration for it.

The chancellor made a special findings of facts, which is embodied in his decree, and which reads as follows:

"'That John P. Kirkpatrick was elected county judge of Saline County in the year 1924, and assumed the duties of office as such on or about January 1, 1925, and thereafter decided it was advisable to place said county upon a cash basis, issuing bonds under Amendment Number Eleven (11) to the Constitution of the State of Arkansas, in case same should be declared adopted, or by some other means in case decision on said amendment should be that it was not adopted, and, in deciding upon this, talked with defendant, A. V. Martin, who, at that time, stated he had approximately $16,000 of the scrip or warrants of said county, and agreed with the said county judge to purchase other outstanding warrants, which, with the warrants held by him, would make approximately $30,000, and that he, said A. V. Martin, would sell all the county warrants held and which should be acquired by him issued prior to October 7, 1924, at the price of 75 cents on the dollar, or turn same over to such person as the county judge might select at said price; and, after said amendment had been declared adopted by the Supreme Court of the State of Arkansas, bonds were issued by said county and the amount for same received by said county immediately preceding the filing of this suit; and, after said decision of the Supreme Court, said Martin agreed to turn over to said county and accept said price for all of said warrants held by him which were issued prior to said October 7, 1924, and which were held by said defendant Martin immediately prior to the institution

of this suit, and turned over by him to the said treasurer of said county for payment, amounting to $18,642.03, and for which the county treasurer erroneously issued his check in the sum of 100 cents on the dollar instead of 75 cents on the dollar, but which check had not been paid at the time of the institution of this suit; and that said county judge, acting on behalf of said county, would not have caused bonds to have been issued under said amendment except for the agreement with said defendant Martin. That, at the time the negotiation between said county judge, acting on behalf of said county, and said defendant Martin, began, the general market price of the scrip of said county was around 60 cents on the dollar, and, in pursuance and fulfillment of the contract between said county judge, acting on behalf of said county, and defendant Martin, and said county judge, acting for said Martin, purchased several thousand dollars' worth of scrip, and was instrumental in assisting said defendant Martin to purchase a material amount of other scrip, and that the scrip held by said Martin and purchased by and for him up to the time when bonds were issued by said county under the provisions of said amendment, amounted to $30,158.55, and that bonds were issued by said county in the amount of the indebtedness of said county. That said contract was made between said county through its county judge and officers, and, had it not been for the said defendant Martin, the county would not have acted to its detriment in issuing bonds.''

A decree was entered in accordance with the findings of the chancellor, and the county treasurer was enjoined from paying to A. V. Martin more than 75 cents on the dollar for the county warrants which had been deposited with him, in accordance with the contract between Martin and the county judge. The case is here on appeal.

*D. M. Cloud* and *W. R. Donham,* for appellant.

*W. A. Utley* and *Brouse & McDaniel,* for appellee.

HART, J., (after stating the facts). We deem it unnecessary to make an abstract of the evidence. While

the testimony of A. V. Martin flatly contradicts that of John P. Kirkpatrick, county judge of Saline County, to the effect that the agreement found by the chancellor was made, still the testimony of Kirkpatrick was corroborated by that of other witnesses, and we think that it cannot be said that the finding of the chancellor was against the preponderance of the evidence. *Leach* v. *Smith*, 130 Ark. 465, 197 S. W. 1160.

It may be then taken as settled, in so far as this opinion is concerned, that the chancellor was warranted in finding that Martin and the county judge of Saline County made a contract whereby the former was to receive 75 cents on the dollar for the county warrants which he owned at the time the agreement was made and those purchased pursuant to the agreement, and that these warrants had been deposited with the county treasurer for payment in accordance with the agreement.

The main reliance of Martin for a reversal of the decree is that the agreement in question was without consideration, and is unenforceable.

Counsel invoke the application of the common-law rule, which has been followed in this State, that, where part payment of a liquidated demand is made in full settlement of the debt, no consideration exists for this promise of the creditor to release the remainder of his debt, and an action may be maintained for it by the creditor. *North State Fire Ins. Co.* v. *Dillard*, 88 Ark. 473, 115 S. W. 154; *Pettigrew Machine Co.* v. *Harmon*, 45 Ark. 290; *St. L. Sw. Ry. Co.* v. *Mitchell*, 115 Ark. 339, 171 S. W. 895; *Ledwidge* v. *Ark. Nat. Bank*, 135 Ark. 420, 205 S. W. 808; *United States* v. *Bostwick*, 94 U. S. 53; and *Fire Insurance Assn.* v. *Wickham*, 141 U. S. 564.

In *Clayton* v. *Clark*, 21 So. 565, 37 L. R. A. 771, 60 Am. St. Rep. 521, the Mississippi Supreme Court, in a vigorous opinion, declared the rule to be absurd and unreasonable, and expressly set it aside.

In a case-note to 41 A. L. R. 1490, it is said that the general rule that part payment of a liquidated indebtedness is no consideration for the discharge of the entire

debt has always been regarded as technical and unjust, and that the modern tendency of the courts has been to enlarge the exceptions to the rule in order to avoid its harshness, and to carry into effect settlements, adjustments and compromises.

In *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Clark,* 178 U. S. 353, the Supreme Court of the United States, in commenting upon the rule, said:

"The result of modern cases is that the rule only applies when the larger sum is liquidated, and when there is no consideration whatever for the surrender of part of it; and, while the general rule must be regarded as well settled, it is considered so far with disfavor as to be confined strictly to cases within it."

While our own court has adhered to the rule, it has recognized exceptions to it. One of these is that part payment of a liquidated indebtedness by a third person is a sufficient consideration for its acceptance by the creditor in the discharge of the entire debt. *Pope* v. *Tunstall,* 2 Ark. 209; *Gordon* v. *Moore,* 44 Ark. 349; and *Wilks* v. *Slaughter,* 49 Ark. 235, 4 S. W. 766.

In the *Pope* v. *Tunstall* case the court said that any change or alteration which renders the creditor's situation more advantageous or the debt more secure, will suffice.

This court has also held that, in cases of contract for the payment of a liquidated sum of money, the payment of a less sum will not be a good satisfaction unless it was paid and accepted before the time when it was to have been paid, or at a different place from that appointed for the payment. *Cavaness* v. *Ross,* 33 Ark. 572, and *Martin-Alexander Lumber Co.* v. *Johnson,* 70 Ark. 215, 66 S. W. 924.

So, too, it has been held that an agreement by a debtor not to go into bankruptcy and thereby be discharged from his debts furnishes a sufficient consideration to support a contract by the creditor to accept less for his debt than the full amount thereof. *Dawson* v. *Beall,* 68 Ga. 328; *Hinckley* v. *Arey,* 27 Me. 362; and *Her-*

*man* v. *Schlesinger,* 114 Wis. 382, 91 A. S. R. 922, 90 N. W. 460.

We think that, under the facts of this case, the contention of Martin that the agreement to take 75 cents on the dollar for his county warrants was without consideration and for that reason invalid, is without merit. In the first place, it may be said that, under our Constitution, the county court is the general fiscal agent of the county, and has power to do all things necessary to the preservation of its funds. *Leathem & Co.* v. *Jackson County,* 122 Ark. 114, 182 S. W. 572. In the exercise of this power the county court might have called in all the county warrants for cancellation and reissuance, and might have canceled all those which had been illegally issued or whose issuance had been procured by fraud. *Monroe County* v. *Brown,* 118 Ark. 524, 177 S. W. 40; *Izard County* v. *Vincennes Bridge Co.,* 122 Ark. 557, 184 S. W. 67; and *Izard County* v. *Bank of Melbourne,* 123 Ark. 458, 185 S. W. 794.

Constitutional Amendment No. 11, authorizing county courts to issue bonds to secure the indebtedness outstanding at the time of its adoption, is self-executing, and the county court need not await the passage of an enabling act to order a sale of bonds. *Matheny* v. *Independence County,* 169 Ark. 925, 277 S. W. 22, and cases cited.

Before the agreement under consideration was made between Martin and the county judge, the former owned certain county warrants, which are general orders payable when funds are found in the county treasury, and which are to be paid in the order of their presentation. These warrants could not be paid until there were funds in the county treasury available for the purpose. Since the issuance of the warrants in question, it appears that there had been no funds out of which they could be paid, and they had not been paid for want of funds.

It is true that the warrants could be used in the payment of taxes by the holders thereof, but, on account of there being no available funds from which to pay them,

they had depreciated in value until they were not worth exceeding 60 cents on the dollar. In order to secure the price of 75 cents on the dollar, Martin made an agreement with the county judge that, if he would exercise his discretion in issuing bonds, he would buy up other outstanding warrants and take 75 cents on the dollar for them.

Upon the situation being explained to the prosecuting attorney and others who held county warrants, they sold their warrants to Martin at a discount, and the county judge assisted Martin in buying up these warrants, so that he could make a profit by the county paying him 75 cents on the dollar for them. Then, pursuant to the agreement, he exercised his discretion and issued bonds to an amount which would pay off these warrants at 75 cents on the dollar, and thereby put the county on a cash basis.

These facts differentiate this case from *Schlessinger* v. *Schlessinger,* 39 Col. 44, 88 Pac. 970, where it was held that payment by a debtor of a sum less than is due under his agreement to the creditor, who executes a release, not under seal, purporting to discharge the debtor of all claims under the agreement, is not a satisfaction of the debt, though the debtor borrowed the money with which to make the payment.

In the first place, it may be said that one reason for so holding was that there was no averment that the plaintiff knew about the defendant's borrowing the money. Then, too, the debt was due at a certain date, and it was the duty of the defendant to pay it on that date, either with his own money or with borrowed money. It was a question whether the county judge could be compelled to issue bonds under Amendment No. 11 to secure money to pay off the existing county warrants. Martin is also charged with knowledge that the county judge had the power to call in the scrip for cancellation and reissuance, and that he might refuse to issue scrip which was illegal or whose issuance had been fraudulently procured in the beginning.

It is true that there is no evidence in the record tending to show that any of the scrip held by Martin was illegal or fraudulently issued, but Martin was a scrip dealer, and had purchased all of his county warrants from various persons, and knew the hazards attached to the calling in of the county warrants by the county judge for cancellation and reissuance. Martin also knew that no levy of taxes could be made beyond the constitutional limit for the purpose of paying county warrants. These facts were sufficient to make the case at bar an exception to the general rule, and the mutual promises and forbearance of the county judge and Martin were sufficient consideration for the execution of the agreement in question.

On the question of the statute of frauds, but little need be said. The facts recited above constituted such a substantial part of the performance of the contract as in any event to take it out of the statute of frauds. *Storthz v. Watts*, 117 Ark. 500, 175 S. W. 406; and *Newton v. Mathis*, 140 Ark. 252, 215 S. W. 615.

Again, on the question of the jurisdiction of the chancery court a short discussion will suffice. The record shows that Martin had numerous county warrants of various denominations, which would cause a multiplicity of suits, had a resort been made to law. Again, under the allegations of the complaint and the proof made in the case, Martin was not entitled to collect more than 75 cents on the dollar of the face value of his county warrants, and the collection of an amount in excess of that sum would have amounted to an illegal exaction, which any citizen of the county might prevent by the injunctive process of a court of equity.

The result of our views is that the decree of the chancery court was correct, and it will be affirmed.

DISSENTING OPINION.

McCULLOCH, C. J. My conclusion is that the alleged contract is not enforceable against appellant, for several reasons. In the first place, the contract was not made by the county court, but with the county judge in vaca-

tion, and there was no authority for the execution of such a contract by the county judge. *Ross Drainage District* v. *Clark County*, 153 Ark. 175, 239 S. W. 740. In the next place, there was no consideration to support the contract, which was, in substance, one to accept payment of county warrants at less than face value. It was merely an executory contract to accept, without other consideration, payment of a smaller sum than due in full discharge of the debt. This court held in *Dreyfus* v. *Roberts,* 75 Ark. 354, 87 S. W. 641 (departing from the rule theretofore adhered to by this court), that, when an agreement to discharge a debt by the payment of a smaller sum has been fully executed, "and such discharge is evidenced in writing, * * * it is a valid and irrevocable act"; but in the later case of *North State Fire Ins. Co.* v. *Dillard,* 88 Ark. 473, 115 Ark. 154, it was said that "where the agreement is not executed, and is not evidenced by any writing, then it is not a bar to an action on the original debt; and, not being a bar, it is immaterial why the agreement is not executed." Later on, in the opinion in that case, this court said: "Still, the promise is to satisfy, and until that promise is fulfilled the agreement has not become binding."

There was no other consideration than the promise of the county judge to issue bonds under Amendment No. 11, for, if the bonds were issued, it could only be for the purpose of paying old indebtedness of the county, of which appellant's warrants formed a part, and, when the bonds were issued and the proceeds thereof received by the county treasurer, these funds could only be applied in the payment of such old indebtedness. In other words, appellant had the absolute right to have the warrants paid out of the funds which accrued from the sale of bonds; therefore the promise of the county judge was merely to comply with the law in that respect.

It is not important at this time to consider whether or not creditors of a county can compel the county court to issue bonds pursuant to Constitutional Amendment

No. 11, for, if they have that right, it is one which exists under the law and does not result from contract, and therefore the promise of the county judge to issue the bonds added nothing to appellant's legal right.   On the other hand, if the issuance of bonds was merely discretionary with the county judge, his agreement to do so was merely a promise to pay in part the debts of the county in discharge of the whole, and, as before stated, the unexecuted agreement was unenforceable.

Finally, it is clear, I think, that the contract was unenforceable against appellant for the reason that there was no mutuality, in that it was unenforceable against the county.   As before stated, the power to issue bonds is one created by law, and such power, or duty to exercise the same, cannot be enlarged or restricted by contract; and if the county court cannot be compelled under the law to issue bonds, then it is under no such compulsion by virtue of the contract.   And the contract, even if it had been made by the county court itself, would have been unenforceable, hence appellant is not bound. I dissent therefore from the conclusion of the majority.