### PLUNKETT *v.* MEREDITH.

Opinion delivered November 28, 1903.

1. STATUTE OF FRAUDS—AGREEMENT TO DIG WELL.—An agreement to dig a well on another's lot is not a contract for an interest in land, within the statute of frauds, and need not be in writing. (Page 7.)

2. SAME—DIVISION WELL.—An agreement on the part of defendant to deepen the well on the dividing line between the lots of plaintiff and defendant, and to allow plaintiff to use the same, is a contract for an interest in land, which is an easement, and should be in writing. (Page 7.)

3. CONTRACT—MEASURE OF DAMAGES.—The measure of damages for breach of a contract to deepen a well until it affords a sufficient supply of water is not the cost of bringing the water from elsewhere, but the cost of making the well of the required depth. (Page 7.)

4. SAME.—If the part owner of a division well prevents its co-owner from deepening the well, in violation of his contract, the measure of damages is the cost of making a new well of the required depth on the latter's premises. (Page 7.)

5. SAME.—The measure of damages for failure to dig a well is the cost of digging same. (Page 7.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

Reversed.

*W. S. & F. L. McCain,* for appellant.

The right to use a well on the premises of another is an easement, and must be conferred by writing. 19 Ark. 23; 54 Ark. 519; 49 Ark. 503. The measure of damages for failure to furnish water, as specified in appellant's contract, would be the cost of deepening the well so as to secure the requisite supply of water. 47 Ark. 168; 22 Ark. 455; 53 Ark. 155; 19 Ark. 115; 13 Ark. 9; 5 Ark. 146; 39 Ark 344.

BATTLE, J. Mrs C. A. Meredith bought a house and lot in Little Rock from appellant, Plunkett. Three years afterwards she brought this action, alleging that when she bought the house and lot a well was in progress of being dug on the dividing line between said lot and the adjoining lot, both of which defendant Plunkett owned, and that to induce her to purchase he agreed that he would sink the well deeper and secure for her a good and sufficient well of water for her business, which was that of washing for the public; but that he had neglected to sink the well and secure the water as agreed, to her damage, $300.

The defendant, R. D. Plunkett, answered, and denied making any agreement about the well, and pleaded the statute of frauds.

Mrs. Meredith testified "that when she went to look at the place to buy it, she told Plunkett she was a washerwoman, and wanted a good well of water; that Plunkett owned not only the house and lot she bought, but also the adjoining lot, on which latter was a house, and that there was a well right on the line, which was a partition well used by the people from both houses; that it was a shallow well, only twelve or fourteen feet deep; that she was afraid it would not furnish water enough, and that he told her that if she would buy the place he would guaranty that it would furnish water enough for her use, and that if it did not do so he would dig it deeper until it would do so." Defendant objected to this testimony, because it was not in writing, and, his objections being overruled, they were saved by proper exceptions. She further testified: "I told Mr. Plunkett that I would not buy the place under any circumstances unless he would guaranty me a good well of water, and he said he would do it. I told him that I had made my living and supported my family for twenty years by washing for the public, and water was the main thing for me."

She testified "that she had bought the land, got Plunkett's deed, and paid him his price, $425 in cash; had given him notes for the remaining $75; that in the summer time the well gave out entirely, and that she had to obtain water from a neighbor's well and from a branch." Being asked how much it was worth by the week or month to carry the water she needed from the branch and from the neighbor's well, the defendant objected, but his objections were overruled, and she answered, "$5 or $6 per month." Appellee's son corroborated his mother's testimony about their having to carry water from the branch and from a neighbor's well, and, being asked what this was worth, defendant objected, but his objections were overruled, and witness then answered, "At least $4 or $5 per month." Appellant's daughter, against defendant's objection, was also allowed to answer the same question asked her brother. Defendant saved exceptions to all the foregoing rulings, and made them grounds for a new trial.

Defendant, testifying in his own behalf, said "that the land was sold to plaintiff by his agent, and that he had never seen appellant in his life until some while after the sale, and denied making any agreement about the well. He said that when the partition well went dry he proposed to her that they join in digging it deeper, and each share half the expense; that she agreed to this, and he then had the well dug ten feet deeper, but she declined to pay any of the expense, and he then dug a new well on his lot ten or twelve feet distant from the partition well, and that the new well cost $75. The partition well was five feet in diameter, half on each lot."

Boone testified "that there was no trouble to get water on the lot; that he had bored the new well for plaintiff, and went down about forty feet and got a good supply of water, but that he had got a good supply of water on another adjoining lot at twenty-three feet; that a dug well did not need to be so deep as a bored well, and that it was worth $1 to $1.50 a foot to dig a well."

The defendant requested the court to instruct the jury as follows:

3. "A contract for the use of a well which is on the division line between two landowners must be in writing."

4. "If defendant made a contract with plaintiff to deepen a well so as to obtain a sufficient supply of water for her use, this contract cannot be enforced if the well was half on plaintiff's land and half on defendant's land, and if the plaintiff's right to use the whole of the well was part and parcel of the contract."

5. "Where a person makes a contract to dig or deepen a well, and he neglects to do so, the greatest amount of damages which could be recovered against him would be the reasonable and necessary cost of digging the well. Therefore, even if defendant agreed to deepen the well so as to obtain a sufficient supply of water for plaintiff's use, and if he neglected to do so, plaintiff can recover no more than it would have cost her to have had the work done by someone else."

And the court refused to give either of them, but modified and gave the fifth with these words added: "Unless you find from the circumstances that plaintiff was justified in resorting to other means to get a supply of water."

The court, on its own motion, and over the objections of the defendant, instructed the jury as follows: "If the jury believe from the evidence that the plaintiff had a contract with the defendant to deepen the well on the partition line between them so as to furnish her a sufficient supply of water for her use, and the defendant neglected or refused to do this, then defendant became liable to plaintiff for whatever amount of damages the evidence shows she suffered by reason of this breach of the contract on the part of the defendant."

The jury returned a verdict in favor of the plaintiff for $65, and the court rendered judgment accordingly, and the defendant appealed.

An agreement of appellant with appellee to dig a well on her lot is not a contract for an interest in land, is not within the statute of frauds, and need not be in writing. But a contract to dig a certain well on the dividing line between the lots of appellant and appellee, one half of which is on the lot of appellant and the other half is on the lot of appellee, deeper and until it affords a sufficient supply of water, and to allow appellee to use the same, is a contract for an interest in land, which is an easement, and should be in writing; and it cannot be enforced against the party pleading the statute of frauds in bar of the right to maintain an action thereon, unless it be in writing. Such a contract, if enforced, would necessarily give to appellee the right to use the land of appellant for a well. *Wynn* v. *Garland,* 19 Ark. 23; *Rudisill* v. *Cross,* 54 Ark. 519, 16 S. W. 575; *Walker* v. *Shackelford,* 49 Ark. 503, 5 S. W. 887.

It follows that the trial court erred in refusing to instruct the jury in accordance with this opinion.

It also erred in instructing the jury as to the measure of damages. If appellant contracted with appellee to deepen the well on the line between their lots until it afforded a supply of water sufficient for her use, and failed to do so, the damages recoverable would be the cost of making it of such depth; or, if he prevented her doing so, the measure of damages would be the cost of making a new well of such depth on her own premises. If he contracted to dig a well for her use, and failed to do so,

the cost of digging such well would be the damages recoverable. *Varner v. Rice,* 39 Ark. 344.

Reversed and remanded for a new trial.