## HILL-INGHAM LUMBER COMPANY *v.* NEAL.

### Opinion delivered March 1, 1909.

1. COMPROMISE—PART PERFORMANCE—REMEDY FOR BREACH.—Where a compromise of a claim under a contract was made, and a partial performance of it by defendant was accepted by plaintiff, the latter cannot, upon a subsequent failure of the former to perform the residue, abandon the compromise and sue upon the original contract. (Page 389.)

2. MORTGAGES—PENALTY FOR FAILURE TO ACKNOWLEDGE SATISFACTION—BURDEN OF PROOF.—In a suit to recover the penalty provided by Kirby's Digest, § 5402, to be recovered where a person receiving satisfaction of a mortgage fails to acknowledge same on the margin of the record within sixty days after being requested, the burden is on the plaintiff to prove that such acknowledgment was not made within the required time. (Page 391.)

Appeal from Polk Circuit Court; *James S. Steel,* Judge; reversed in part.

The Hill-Forrester Lumber Company, a corporation engaged in the lumber business in this State, entered into a contract with one J. R. Neal for the purchase of certain lumber at a certain price, the output of two sawmills owned by Neal, during the year 1907. The lumber company under the terms of the contract was to advance to Neal the sum of $5 per thousand feet on the lumber as fast as it was cut and stacked in proper shape in the yards and insured in favor of the lumber company. The lumber company advanced to Neal on the contract the sum of $1,000, with interest at the rate of ten per cent. per annum, secured by a mortgage on the two mills and on all the timber owned by Neal.

Appellant and appellee afterwards entered into the following contract:

"It is agreed that upon the 19th day of January, 1907, J. R. Neal entered into a written contract for sale of lumber to the Hill-Forrester Lumber Company, and that since the execution of said contract the said Hill-Forrester Lumber Company has been succeeded by Hill-Ingham Lumber Company, and that said Hill-Ingham Lumber Company has assumed all the provisions and conditions of the said contract made with Neal as above stated.

"It is further agreed that under the terms and conditions of the said contract the said Neal is due the Hill-Ingham Lumber Company upon the 19th day of this month seven hundred dollars ($700) with accrued interest, and that the Hill-Ingham Lumber Company, hereafter called the party of the first part, agrees to extend the payment of the said $700 with interest for ninety days from the 19th day of July, 1907, upon these conditions:

"First. As a part consideration for the extension of time, the said J. R. Neal, the party of the second part, agrees to deliver on board of cars at Acorn as much as 125,000 feet of lumber to the order of the Hill-Ingham Lumber Company, this

lumber to be delivered as stated above within the ninety days from July 19, 1907.

"Second. It is agreed upon the part of Hill-Ingham Lumber Company that it advance to the said Neal, from time to time as cars of lumber are shipped, four dollars per thousand feet, which is for the purpose of paying for the hauling and other expenses incident to the manufacture of the lumber and placing it upon the cars.

"Third. It. is further agreed that in case 125,000 feet of lumber do not pay the full amount due the Hill-Ingham Lumber Company at the expiration of ninety days, then the company agrees to give Neal thirty days more time in which to pay the balance due it with lumber under the terms and conditions of the said contract with Hill-Forrester Lumber Company.

"Fourth. It is agreed upon the part of Neal that he execute a good and sufficient bond to Hill-Ingham Lumber Company, party of the first part, and to be approved by them, in the sum of $1000, conditioned that the party of the second part fulfill and carry out the agreement in this extension and the terms and conditions of the contract upon his part with the Hill-Forrester Lumber Company, which is now a contract between the parties hereto.

"Fifth. The agreement that the original contract as mentioned with Hill-Ingham Lumber Company as per agreement with Hill-Forrester Lumber Company is changed in this respect, to-wit, that, whereas, in said contract it is specified that five dollars per thousand feet is to be advanced to the party of the second part upon all lumber upon his mill yard, that this provision of the said contract is eliminated, and the only money to be advanced is four dollars per thousand feet as specified above. Upon the fulfillment of the contract herein, the party of the first part agrees and obligates itself to deliver to the party of the second part all mortgages, contracts and papers relating to this transaction, and to satisfy the same of record.

"Given under our hands this the 17th day of July, 1907.

"Hill-Ingham Lumber Co.,
  "By Roy Lundy,
  "J. R. Neal."

Appellant brought suit against appellee on these contracts, alleging that he had failed to furnish to the appellant 101,517 feet of the lumber specified in the contract, by reason of which appellant was damaged in the sum of $304.50, the amount of profits which it would have realized had the contract been duly performed by the appellee.

Appellee answered, admitting the execution of the contracts, and setting up that it was not the intention of the appellee, in the execution of the latter contract for the shipment of 125,000 feet of lumber, that the appellant should make a profit upon said lumber, but that the object of the agreement was to secure to appellant the payment of the $700, and to extend the payment on the said amount for a period of ninety days, and to give appellee an opportunity to pay the same in lumber if it was so desired. Appellee alleged that the only reason that the 125,000 feet of lumber were mentioned in the contract was because appellant estimated that it would take that amount to pay the debt due appellant. Appellee alleged that the provision of the contract requiring a bond to be executed by him was waived by the appellant. Appellee also alleged that he did not deliver the balance of the lumber mentioned in the complaint because appellant had agreed to accept payment other than by delivery of the lumber; and that appellee on the 30th day of September, 1907, paid off the indebtedness due to appellant by delivering to appellant a wagon and team at the price of $275, a stock of shoes at $254.80, and a car of lumber amounting to $127.35; making a total payment upon the indebtedness due appellant of $_____, leaving a balance due of $_____, which was paid in full by check of the appellee on the National Bank of Mena, which check was accepted and afterwards cashed by the appellant; that the check showed specifically that it was in full payment of all indebtedness due appellant. Appellee denied that appellant suffered the loss alleged in its complaint, and denied that it would have realized the profit on the lumber alleged had the same been received by appellant.

Appellee set up by way of cross-complaint that he had paid appellant all of his indebtedness to it which was secured by the mortgage on the two sawmills—one known as Mill No. 1, and one known as Mill No. 2—situated in Polk County, the

mortgage being executed upon the 19th day of January, 1907, and filed with the clerk and recorder of Polk County; and the appellee alleged that he notified appellant in writing to satisfy the mortgage, but that the appellant failed and refused to enter satisfaction of the mortgage at the time it was paid, or at the time it was notified so to do, and had not on the 18th of January, the time of filing its complaint, satisfied said mortgage; and appellee alleged that by reason of the failure of the appellant to satisfy said mortgage he had been damaged in the sum of $600; that if it had not been for the incumbrance of Mill No. 2, as shown by the record of the mortgage, appellee could have sold the same for the sum of $750. Wherefore he prayed for damages on his cross-complaint in the sum of $600.

Appellant, in answer to the cross-complaint, denied that the mortgage was paid, and denied that it had received notice to satisfy the mortgage; but alleged that it did satisfy the mortgage on the _____day of January, 1908, and denied that appellee was damaged in any sum.

The cause was sent to the jury upon the issues as thus presented, and after hearing the evidence the jury returned a verdict in favor of appellee on his cross-complaint for $200. Judgment was entered accordingly, and this appeal was taken.

*Mark P. Olney,* for appellant.

WOOD, J., (after stating the facts.)   First.   The appellee contended, and adduced evidence tending to show, that the indebtedness due appellant under the contracts was paid and the contracts discharged in this way, towit, it was agreed verbally between appellant and appellee that the debt should be paid by appellee turning over to appellant a team, a carload of lumber and a lot of shoes, which amounted in the aggregate to $776.23, which, taken from the debt of $787.66 due appellant, left a balance of $11.43 which appellee was to pay by lumber or check; that appellee performed the agreement on his part.   It was contended by appellant, on the other hand, that appellee was to pay in addition to the above the sum of one hundred dollars( which, appellant claimed, represented the profit that appellant would have realized had appellee shipped the lumber under the written contract), and ship an additional car of lumber at a specified

price, and that appellee failed to perform his contract in the latter particulars only. On this phase of the case the appellant requested the following:

"(4½). If you find from the evidence that after this contract was made the plaintiff agreed to accept a wagon and team and harness and some shoes on amount due plaintiff in consideration of defendant agreeing to pay the plaintiff one hundred dollars and selling him a car of lumber at $13.00 per M feet, and if you further find that plaintiff accepted the horses, wagon, harness and shoes, but that defendant failed and refused to pay the one hundred dollars and failed and refused to deliver the lumber, you are instructed that plaintiff has a right to treat this contract as broken and rely on the original contract.

(5½). If you find that plaintiff and defendant made the contract referred to in instruction 4½, and that this supersedes the written contract, and that plaintiff did not treat this contract as broken and rely on the original contract, but instead relied on this latter contract, your measure of damages will be one hundred dollars and the difference between the agreed price on the car of lumber and its market value, if you find that defendant failed and refused to deliver the lumber and to pay the one hundred dollars."

The court did not err in refusing to give these prayers. After appellant had accepted the team, shoes and lumber under the contract of settlement, even if its terms were according to his contention, he could not then repudiate same, and rely on the original contract. The question is ruled in principle by *Whipple* v. *Baker*, 85 Ark. 439, where we said, speaking of a contract for compromise and settlement of a disputed matter: "This partial performance by the defendant and acceptance of its benefits by the plaintiff placed it out of the power of the plaintiff to abandon the contract and sue for the original consideration, as he attempted to do in this case. He must resort to his action for damages on the contract, if any he has sustained, for the part not performed."

Prayer 5½ was inseparably connected in express terms with 4½, and falls with it. In all other respects the rulings of the court on the issue raised by the complaint and answer were cor-

rect, and it could serve no useful purpose to discuss them. The verdict and judgment on this issue are correct.

Second. The question as to whether or not the penalty accruing under section 5402 of Kirby's Digest could be set up by way of cross-complaint to an action for breach of contract was not raised in the court below, and we therefore express no opinion on that question here. But, treating the issue raised by the cross-complaint and answer thereto as the parties treated it on the trial, we find that there was no evidence to sustain the verdict.

The evidence shows that appellee notified appellant by letter November 6, 1907, to satisfy the record of the mortgage which appellee claims he had discharged. Appellee testified: "This is the time I asked him to satisfy the record." Appellant, under the statute had 60 days, from the time it was requested, to satisfy the record. Section 5402, Kirby's Digest. The record was satisfied by appellant in January, 1908. But the evidence does not show what time in January the record was satisfied. For aught the evidence shows to the contrary, the satisfaction may have been within sixty days from the time the request was made to satisfy. The burden of proof on this issue was on the appellee. The evidence therefore does not show any failure on the part of appellant to satisfy the record. The appellant, on the issue raised by the cross-complaint and answer thereto, asked, among other prayers, the following:

"(7). You are instructed that the defendant cannot recover on his cross-complaint."

This prayer should have been granted.

For the errors indicated the judgment on the cross-complaint is reversed, and the cause as to this is dismissed.

BATTLE, J., not participating.