LEDWIDGE *v*. ARKANSAS NATIONAL BANK.

Opinion delivered July 8, 1918.

1.  ACCORD AND SATISFACTION—PART PERFORMANCE.—Where an accord is performed in part only, there is no satisfaction, and the original right of action remains, and the party to be charged is allowed what he paid in diminution of the amount claimed.

2. FRAUDULENT CONVEYANCE—BULK SALES LAW—LIABILITY OF PUR-
CHASERS.—One who purchases a stock of goods in violation of the
bulk sales law becomes liable as a receiver of the stock of goods to all
creditors of the seller *pro rata* merely, and not for the full amount of
all claims.

3. APPEAL AND ERROR—SUPERSEDEAS BOND—EFFECT.—Where a mer-
chant sold to his wife a stock of goods in violation of the bulk sales
law, and judgment was entered against her for the full amount of a
claim against him, instead of for the *pro rata* amount payable to the
claimant, the error was immaterial on appeal where husband and wife
executed a joint supersedeas bond, and the judgment against the
husband was affirmed.

Appeal from Garland Chancery Court; *J. P. Henderson,* Chancellor; affirmed.

*Hogue & Heard* and *C. T. Cotham,* for appellants.

1. Appellant compromised his indebtedness with
the bank and paid $2,250 in full satisfaction of all its
claims and demands, and the bank accepted it in full
payment and issued its receipt. If a mistake was made,
this would not affect the composition and settlement.
Appellant offered to correct the mistake, if made. The
appellees' claim was satisfied. 85 Ark. 439; 89 *Id.* 385.

2. An accord was made and agreed to and a tender
of satisfaction made. If a mistake was made it only
fixed appellants' liability for the amount of the error.
34 Wash. 166-172; 101 N. Y. 591.

3. There was an accord and lawful agreement for
satisfaction. 75 Ark. 354; 18 N. Y. S. C. 208. By accept-
ing the amount appellee accepted satisfaction. When the
bank accepted the deposit the title passed to it. 124
Ark. 532-6. Full satisfaction of the accord was made,
and the accord and satisfaction was complete. 124 Ark.
552-6-8; 115 *Id.* 392; 118 *Id.* 176. The drawee and payee
may be one and the same person. Brennan, Neg. Inst.
Law, p. 11, § 8. If a mistake was made it was simply an
overdraft. 76 C. J. 682; 90 Atl. 409; 2 Michie on Banks,
etc., 1250. The payment by the bank constituted a loan
for the amount of the overdraft. 242 Mo. 138; Am. Dig.,
Dec. ed, vol. 3, § 150. See also 2 Michie, Banks & B.,
1252, 908, §§ 124, 150; 88 Ill. 152. The composition

agreement was fully performed and the accord fully satisfied.

4. The sale to Mrs. Ledwidge was not fraudulent. It was made for a good consideration. 56 Ark. 259; 46 *Id.* 542. It was not made to defraud creditors but to aid in paying them.

5. Restitution and estoppel. Restitution should be made. The bank accepted the money and not having made or offered restitution is estopped. 24 N. Y. Sup. 19; 108 N. Y. 470.

6. It was error to render a personal decree against Mrs. Ledwidge for $2,475.

7. Under the Bulk Sales Law, if the sale was void Mrs. Ledwidge was only liable for all the debts on a *pro rata* basis and not for appellants' entire debt to the bank. On the whole case there is reversible error and the complaint should be dismissed.

*Rector & Sawyer,* for appellee.

1. The learned and able opinion of the chancellor fully sets forth the law of this case. His findings of fact are correct and will be sustained as the evidence sustains them. The burden is on appellant to establish error and he has failed.

The issues are plain and simple. Ledwidge owed the bank $2,475 and fraudulently conveyed to his wife an undertaking business which is void because made with intent to defraud creditors, and because it was contrary to the Bulk Sales Law. The release and receipt was obtained through a mistake. 17 Cyc. 632, (111); 17 *Id.* 631 (B), p. (11). Thus the way is opened to impeach the release. The receipt is not binding as it was an error. 30 Cyc. 1226, note 3.

2. This was a cash transaction. There was a failure to comply with the agreement and there was no accord and satisfaction, no compromise or composition settlement. 8 Cyc. 436; 12 Peters, 191; 70 Ark. 215; 78 *Id.* 304; 88 *Id.* 473. There was no satisfaction of an accord. 12 Peters, 191; 1 C. J. 533 (21); *Ib.* 532. The

original debt was recoverable. 8 Cyc. 442; 12 Peters, (9 L. ed.) 1046.

3. There was no performance of the composition settlement. 8 Cyc. 841. The composition was avoided. 130 Pa. St. 619; 18 Atl. 1065; 29 How. Pr. 11; 8 Cyc. 442. A breach avoids the composition and the creditor may sue for the whole debt. 12 Peters, 178. The failure to pay after the mistake was discovered was wilful.

4. To constitute accord and satisfaction there must be full compliance on the part of the debtor. 1 Cyc. 314; 12 Peters, 178; 143 Mass. 42; 8 Cyc. 422; Ann. Cases, 1914, A. 845. Appellee had the right to recover the full debt. 16 Vesey, 374.

5. The sale was fraudulent as to creditors and without consideration. The testimony shows it and the chancellor so found.

6. In all cases of accord and satisfaction and compositions, where there is a breach by the debtor, the creditor can apply the amount actually paid to the debt and sue for any balance. Our court is in line with this doctrine. Cases *supra.*

7. The decree was correct as to Mrs. Ledwidge. 20 Cyc. 821; 61 Am. St. 625; 83 Ala. 274. The property was personal property and disposed of by her.

8. The sale was void under the Bulk Sales Law. Mrs. Ledwidge became a receiver of the assets and liable for the value to the creditors. K. & C. Dig., § 3987. The decree should be affirmed in all respects.

SMITH, J. The Arkansas National Bank sued C. J. Ledwidge and Maude Anna Ledwidge, his wife, and for cause of action alleged that C. J. Ledwidge was indebted to it in the sums of $2,250 and $225 and while so indebted had made a voluntary conveyance to his wife of an undertaking business which he owned in the city of Hot Springs, and which said conveyance rendered him insolvent. An amendment to the complaint was filed which alleged the sale was made in violation of the Bulk Sales Law of this State, in that the notice there

required was not given to creditors. The answer denied these allegations and set up an accord and satisfaction of the demand sued on.

The record is a voluminous one and various matters of more or less relevancy were developed in the testimony. But the relevant facts may be summarized as follows: Ledwidge was largely indebted to numerous creditors and was in fact insolvent. The bank was his principal creditor, and he had long been one of its customers and the relation between Ledwidge and the managing officers of the bank was close and cordial. The bank undertook to assist Ledwidge in settling with his other creditors and to that end prepared a letter which was sent them advising an acceptance of fifty cents on the dollar in full settlement of their demands. The officers of the bank testified, however, that there was no agreement on its part to accept less than the full amount due it. This Ledwidge denied, and the court in effect found with Ledwidge on this issue. Ledwidge was at the time indebted to the bank in the sum of $4,500, and according to his version he discharged this indebtedness by a payment to the bank of fifty cents on the dollar as agreed. It appears that other creditors were paid fifty cents on the dollar of their indebtedness pursuant to the proposal to that effect.

The bank executed to Ledwidge a receipt for $2,250, which recited that it was "Payment in full of all demands and claims to this date, and in consideration of said sum the said C. J. Ledwidge is hereby released of and from any and all other demands and claims of every kind and nature to this date."

At the time the payment recited was made Ledwidge had some cash items and a good note for about $250, which the bank was willing to take, but offered to credit only the proceeds of the note after discounting it. This Ledwidge agreed to, and he was then directed to prepare a deposit slip showing his items and to draw a check for the amount thereof, and this he did, whereupon the receipt was executed. The transaction detailed

occurred after banking hours, and the cashier placed all the papers in his private box and on the following morning gave them to the teller to enter on the books of the bank. In doing this it was discovered that Ledwidge had been given credit on his deposit slip for the face of the note and also for the proceeds thereof after discounting it. The bank assumed that the mistake would be corrected, as it was apparent, and the transaction was entered on the books of the bank by a proper entry of the items in question and Ledwidge was notified of the mistake the day it was discovered. He denied that any mistake had been made, but promised to correct it if such was the case. The mistake was not corrected, and Ledwidge took the position that no mistake had been made, and it is now argued that the bank accepted Ledwidge's check for the sum recited and issued the receipt in consideration thereof, and that if there was a mistake its effect was only to permit an overdraft of Ledwidge's account at the bank. This contention is based upon the theory that the deposit by Ledwidge of his items was one transaction, and that the bank became his debtor for the amount thereof, and that drawing the check to the order of the bank for the amount of these items was an entirely different transaction, and that as a result of both transactions Ledwidge had satisfied the accord which he had made with the officers of the bank but in doing so had overdrawn his account. A complete answer to this contention is that there were not two transactions as contended. There was only one. Depositing the items and drawing the check against them was a simultaneous transaction. For convenience it was the method adopted of giving Ledwidge credit for the payment recited in the receipt.

We have, therefore, an accord, but the question is whether there was a satisfaction, and this appears to be the real question in the case. We do not have before us the question whether an accord can be defeated by a mutual mistake made in its satisfaction, although it may be conceded that the mistake at the time it was made

was a mutual one; but it was soon discovered, and its existence was so patent that there could be no question about Ledwidge having failed to pay the sum of money which he had agreed to pay and which the receipt recited he had paid. He was called upon frequently to rectify the mistake and failed to do so. His position was that no mistake had been made and that he had received a receipt which was a full acquittance. It is true that he stated that if a mistake had been made he would give his note to correct it, but he never gave the note nor was there any agreement to accept a note in lieu of the cash payment which should have been made. The matter remained in this unsettled condition for several months, when finally after suit had been threatened Ledwidge proposed to give the note or to pay the cash, but the proposition was conditioned upon the acceptance of the payment then to be made as full settlement of the original indebtedness. The bank declined to receive the sum thus tendered and brought this suit to recover the amount of its original debt less the sum paid.

There is no dispute in this case about the amount of the original debt, and there has never been. And the court below held in effect that there had been an accord without satisfaction and rendered judgment for the amount of the original debt less the sum paid.

It will be borne in mind that the original debt sought to be settled was not unliquidated. There was no question about its amount. A settlement of fifty cents on the dollar was promised but was not made. The entire sum promised was not paid. Upon the contrary, $225 of that amount has never been paid. It was to have been paid in cash and before the execution of the receipt and the receipt was executed under the mistaken belief that the sum recited had been paid. There was no satisfaction of the accord. The bank was entitled to a cash payment but did not get it. Ledwidge stood upon the proposition that no mistake had been made and refused to correct it after repeated demand so to do, and he can

not by his belated tender claim the benefit which would have inured from a prompt correction of the mistake.

The cases of *Whipple* v. *Baker,* 85 Ark. 439, and *Hill-Ingham Lumber Co.* v. *Neal,* 89 Ark. 385, are cited in opposition to the views here expressed. But the doctrine of those cases is not applicable here. In those cases the minds of the parties had fully met, and a new agreement made which was accepted in satisfaction of the demand compromised. The instant case is ruled by the case of *St. L. S. W. Ry. Co.* v. *Mitchell,* 115 Ark. 339. In that case we quoted from 1 Corpus Juris the following statement of the law:

"In 1 Corpus Juris, sec. 20, page 363, it is said: 'Mere readiness to perform is insufficient, and while there are a few decisions which seemingly hold an accord, with tender of performance and refusal to accept, is equivalent to satisfaction, and may be so pleaded in bar of the action on the original claim, the great weight of authority is directly to the contrary. The majority of decisions are to the effect that tender of performance is in no case equivalent to performance and, therefore, not a satisfaction of the original obligation. Nothing short of actual performance, meaning thereby performance accepted, will suffice. But this rule, as is elsewhere shown, would not apply in a case where a new agreement or promise, instead of the performance thereof, is accepted in satisfaction.'

"And sections 21 and 22, page 364, of the same authority read as follows:

" 'Sec. 21. Accord and part performance do not constitute satisfaction. It is merely executory so long as to its terms something remains to be done in the future. If performed in part only, the original right of action remains, and the party to be charged is allowed what he has paid in diminution of the amount claimed.'

" 'Sec. 22. Performance of part and readiness to perform the balance, or performance in part and tender of performance of the balance, are likewise insufficient to constitute a satisfaction.' "

These cases are reconciled by the statement of the law contained in the first quotation from Corpus Juris set out above that "Nothing short of actual performance, meaning thereby performance accepted, will suffice. But this rule, as is elsewhere shown, would not apply in a case where a new agreement or promise, instead of the performance thereof, is accepted in satisfaction."

Here the accord was not satisfied because the consideration on which it was based failed in part and nothing was accepted in lieu thereof. Many cases are cited in the notes to the text quoted in support of the text.

The chancellor prepared an elaborate opinion on the trial of this cause and announced substantially the view we have here expressed and rendered judgment in favor of the bank for the amount of the original debt less the sum paid.

The court also held that the sale of the undertaking business constituted a violation of the Bulk Sales Law; and we think that finding should also be sustained. We held in the case of *Stuart* v. *Elk Horn Bank & Trust Co.*, 123 Ark. 285, that the purchaser of a stock of merchandise and fixtures in bulk who failed to comply with the Bulk Sales Law became liable as a receiver of the stock of goods to all the creditors *pro rata*. The court below gave judgment in favor of the bank against Mrs. Ledwidge for the full value of the goods she received, and in this respect error was committed. The court should have ascertained the full amount of indebtedness due by the business which Mrs. Ledwidge purchased and the per cent. to which each would have been entitled had their claims not been otherwise settled and judgment rendered in favor of the bank for that sum only. It does not appear that we can make this calculation from the record before us, and the cause will be remanded to the court below to hear such testimony as is deemed necessary to enter a decree in accordance with this opinion.

SMITH, J., (on rehearing). A judgment has been entered on the supersedeas bond which renders it unnecessary to remand the cause for the purpose stated in the original opinion. A bond superseding the entire judgment was executed by both Mr. Ledwidge and his wife together with their surety, and, as the judgment has been affirmed, it becomes immaterial to determine the portion of the indebtedness for which Mr. Ledwidge and his wife were respectively liable. Under the bond they became jointly liable for the entire judgment.

It is conceded that such is the effect, *prima facie,* of the bond, but it is urged that no such intention existed in executing it, and that it was desired to supersede the judgment only as against Mrs. Ledwidge. The bond is unambiguous, and we can afford no relief.

The decree rendering judgment on the bond is therefore affirmed, and the motion for rehearing is overruled.

McCULLOCH, C. J., (dissenting). This is a suit in equity, and we are called on to enforce rights upon equitable principles, and I am unable to discover any principle upon which appellee can rightfully insist upon payment of more than was agreed should be paid in the composition of creditors. To do so is to violate the agreement which appellee entered into with the other creditors of Ledwidge to accept fifty per centum of its claim in full satisfaction; and on the other hand, a mere correction of the mistake in the settlement would give to appellee just what it agreed to accept, and would result in the enforcement of all its rights. Appellee endeavored to prove that it had a secret agreement with Ledwidge that the latter was to execute his note for the other half of the debt notwithstanding his composition of creditors, but learned counsel of appellee concede in their brief that such secret agreement was wholly void and unenforcible because it operated as a fraud on the other creditors. That is undoubtedly the law on the subject. 2 Pomeroy's Equity Jurisprudence, sec. 967; 1 Corpus Juris, 547, sec. 56; *Willis* v. *Morris,* 63 Tex. 458, 51 Am. Rep. 655; *Howe* v. *Litchfield,* 3 Allen (Mass.)

443; *Harvey* v. *Hunt*, 119 Mass. 283; *Kullman* v. *Greene-baum*, 92 Cal. 403, 27 Am. St. Rep. 150; *Hayes* v. *Davidson*, 70 N. C. 573.

Prof. Pomeroy states the prevailing rule very fully and correctly as follows:

"Where a composition is made by a debtor with his creditors upon the basis of his payment to all who join in the transaction the same proportionate share of their claims, and of being therefore discharged by them from all further liability, a secret agreement by the debtor with one of these creditors, expressly or impliedly as a condition for the latter's joining in the composition, whereby the debtor pays or secures to the favored creditor a further sum of money or amount of property, or greater advantage than that received and shared alike by all the other creditors, is a fraud upon such other creditors, and is voidable. The agreement, if executory, can not be enforced against the debtor in equity or at law; the security may be set aside by a court of equity, and the amount paid by the debtor in pursuance of the contract may be recovered back by him. The relief, defensive or affirmative, thus given to the debtor does not rest upon any consideration of favor due and shown to him, but wholly upon motives of policy, to protect the rights of the other creditors and to secure them against such fraud."

The same rule is stated in Corpus Juris, as follows:

"The consideration which supports the agreement of each creditor is the undertaking of the creditors to release their common debtor from a portion of their respective claims. The agreement of each creditor with the other creditors of the common debtor constitutes a good and valid consideration. After a creditor has thus agreed to relinquish part of his claim and induced others to become parties to the composition, it would be a fraud on them to annul the agreement and collect the full amount of his claim."

Now, the facts of the case are that appellee agreed, as did the other creditors of Ledwidge, to accept one-half of its debt in full, and Ledwidge paid the other creditors said proportion of their respective debts, and, pursuant to the agreement, went to appellee's place of business and paid to the latter's cashier what was supposed to be the amount of its proportion, and received a full acquittance, but it was afterwards ascertained that a mistake of $225 had been made in the payment. There was, and still is, a controversy between the parties as to whether or not a mistake has been made in that respect, but the chancellor has found in accordance with what appears to be a preponderance of the testimony that there had been a mistake in the amount paid and that Ledwidge still owes appellee the sum of $225 on the composition agreement, but the occurrence of that mistake, and even Ledwidge's failure or refusal to correct it, does not enlarge appellee's rights under the new contract.

It seems to me that a decree in appellee's favor for recovery of $225, with interest, would do complete justice between the parties and that a recovery of more than that amount would result indirectly in the perpetration of fraud on the other creditors. A court of equity should, in other words, merely correct the error in the settlement and put the parties in the same position they would have been in with reference to the settlement as if no mistake had been made. *Russell & Co.* v. *Stevenson,* 34 Wash. 166; *Carpenter* v. *Kent,* 101 N. Y. 591.

I think that the majority missed their mark entirely in deciding this case on the doctrine of accord and satisfaction, and in holding that it is an ordinary case of partially unexecuted accord. The consideration for the agreement to accept in full satisfaction a less sum than the whole of the debt was, as has already been shown by quotations from the authorities, the mutual agreement of creditors of Ledwidge to accept that same proportion.

That being true, there was a valid consideration for the agreement and the partial payment on the stipulated sum to be paid brings the case squarely, I think, within the rule laid down by this court in former decisions. *Whipple* v. *Baker,* 85 Ark. 439; *Hill-Ingham Lumber Co.* v. *Neal,* 89 Ark. 385.

I can see no distinction between the cases, and it seems to me that the court has in effect disregarded them. There was, in other words, an independent consideration, *i. e.,* the mutual agreement of the creditors, to support the new contract. An acceptance of a partial payment left the creditors with no remedy except to enforce the new contract by suit for recovery of the balance due under that contract. Such is the effect of our decisions, and the case of *Russell & Co.* v. *Stevenson, supra,* is directly in point on this subject. In the New York Court of Appeals case cited above, that court speaking upon a state of facts calling for application of the same principles as the present case said:

"We do not think that the defendants had the right to have the whole account opened, but that they were bound by the account actually settled, unless they could show some mistake or fraud in the settlement. * * * Where an account has thus been adjusted by the parties, if any mistake is subsequently discovered, the whole account need not be opened and readjusted, but the mistake can be corrected and the rights of the parties readjusted as to such mistake. Here, leaving everything to stand just as the parties actually adjusted and settled the items of the account, there still remains due to the plaintiffs the sum which they claim in this action, and that sum they were entitled to recover without opening the account."

I, therefore, record my dissent from the conclusion of the majority, as I think that not only has violence been done to settled principles of law, but that the decision brings about a miscarriage of natural justice.