# CHARLESTON.

HAGAN-RATCLIFF & Co., *et al v.* BLAKE, *et al.*

(No. 6670)

Submitted April 15, 1930. Decided April 22, 1930.
(Rehearing Denied May 29, 1930.)

*Fitzpatrick, Brown & Davis, Frank W. Riggs,* and *Walter L. Brown,* for appellee Blake.

*John E. Jenkins* and *Wilbert H. Norton,* for appellant.

MAXWELL, JUDGE:

This is a suit in equity brought primarily under the Bulk Sales Law. It was instituted by the creditors of the partnership of Blake & Leach against J. N. Blake and C. G. Leach, late partners, trading as Blake & Leach, and against C. G. Leach and E. P. Leach, late partners, trading as Leach Brothers, successors to Blake & Leach. The principal object of the suit is to obtain decretal judgments against the named defendants in favor of the respective creditors of the firm of Blake & Leach.

On November 1, 1926, the partnership of Blake & Leach was

dissolved. Claims of creditors amounted to $11,110.21. The goods, wares, merchandise and fixtures were of the value of $7,400 as found by the commissioner in chancery, and approved by the trial chancellor. The commissioner in his very able report found that C. G. Leach by the agreement incident to dissolution of the partnership, assumed the liabilities of the firm in consideration for the goods and merchandise, which transaction amounted to a sale under the Bulk Sales Law from N. J. Blake to C. G. Leach. None of the provisions of the Bulk Sales Law were complied with.

Simultaneously with the above mentioned dissolution and sale, yet entirely separate therefrom according to the commissioner's finding, C. G. Leach for valuable consideration took his brother, E. P. Leach, into partnership the brother thereby acquiring one-half of the partnership assets, the said one-half interest being valued at $3,700. This constituted another or second sale within the purview of the Bulk Sales Law. Its provisions were again disregarded. By purchasing assets valued at $3,700, E. P. Leach became liable to the creditors of Blake & Leach to the extent of the ratio of $3,700 to $11,110.21, or 33.327 per centum. The transaction subsequent thereto need not be gone into, for although E. P. Leach did buy out his brother's interest, in May or June, 1927, and did thereafter sell the stock in bulk, we are concerned here only with the creditors of Blake & Leach, not those of Leach Brothers.

Were these the entire facts, the solution of the problems presented would not be difficult, but there is another important phase of the matter. The facts show, and the commissioner so held, that when E. P. Leach entered into partnership with his brother, C. G. Leach, the latter made the representation to him that the total liabilities of the firm of Blake & Leach amounted to $5,800, and with such a belief and on the basis thereof E. P. Leach agreed to assume with his brother the payment of that amount. The facts further show that of such amount E. P. Leach has paid $5,745.15. The commissioner, in determining the liability of E. P. Leach to the creditors of Blake & Leach, took this $5,800 as the amount

upon which to prorate his liability, and accordingly held that E. P. Leach should satisfy the creditors of Blake & Leach in the proportion of $5,800 to $11,110.21, or approximately 52.2 per centum. We cannot justify this finding. E. P. Leach's contractural obligation was to assume responsibility for $5,-800 of the indebtedness of Blake & Leach. He did not undertake to apply that amount ratably. Nor was there any legal obligation upon him to pay it ratably. The record discloses that the sum of $5,745.15 already paid by him as part of the $5,800 was used to pay creditors in various percentages of their respective claims. Some received nothing. There are two separate matters here; first, the obligation of E. P. Leach under his contract, and second, his obligation under the Bulk Sales Law. Under the law each creditor shoud receive his proportionate amount, or 33.327 per centum of his claim, which is the basis hereinabove ascertained. E. P. Leach can only be relieved of this obligation under the Bulk Sales Law to the extent that he has paid to some of the creditors 33.327 per centum of their respective claims. To those creditors who have received nothing or amounts less than the required 33.327 per centum of their claims, E. P. Leach is still indebted to the extent of said percentage. *Emmons-Hawkins Hardware Co.* v. *Sizemore,* 106 W. Va. 259, 145 S. E. 438; *Ledwidge* v. *Bank,* 135 Ark. 420, 205 S. W. 808. ''A purchaser in violation of the Bulk Sales Act acquires no rights in the property purchased as against the creditors of the seller. His status is that of trustee, or receiver for the benefit of all the creditors of the seller. * * * The liability as trustee or receiver is to all the creditors pro rata.'' 27 C. J. § 892, page 885.

Not only did C. G. Leach represent to E. P. Leach that the indebtedness of the partnership of Blake & Leach was not in excess of $5,800 on November 1, 1926, but Blake also acted upon that basis in closing out his interest to C. G. Leach. E. P. Leach knew of Blake's actions which involved at least a tacit approval of said basis of indebtedness because he, E. P. Leach joined with his brother in the execution of certain notes which his brother gave to Blake in part payment of the

consideration passing to Blake for his retirement from the firm, and that consideration was arrived at by fixing the indebtedness at $5,800. So that it appears that E. P. Leach was misled not only by the express representation of C. G. Leach, but as well by the conduct of Blake. Now, in the light of these facts, and by reason of the further fact that Blake and C. G. Leach were each liable to the full extent of the indebtedness of the partnership of Blake & Leach, equity and good conscience require that Blake and C. G. Leach, jointly and severally, should reimburse E. P. Leach to the extent of such moneys as he shall be required to pay to the creditors of Blake & Leach in excess of the said sum of $5,800. This should be independent of any proper settlement between C. G. Leach and E. P. Leach of their partnership accounts.

Among the creditors of the partnership of Blake & Leach was Sehon-Stevenson & Co., a corporation. On the 1st day of January, 1927, C. G. Leach, without the knowledge of his partner, E. P. Leach, made a note to said corporation in the sum of $2,309.28 payable on demand; and signed thereto the firm name of Leach Brothers, and indorsed on the back thereof the names of both C. G. Leach and E. P. Leach. The latter denied liability on this note and excepted to the commissioner's finding which held him liable. We are of opinion that the exception ought to have been sustained. The note, if upheld, would fasten upon E. P. Leach a burden for which he is not obligated by his personal undertaking, in view of the fact that he has otherwise applied nearly all of the $5,800, nor is such burden imposed upon him by the Bulk Sales Law. And, because the note was not given for a debt of the partnership of Leach Brothers, he cannot be held liable thereon merely because his partner assumed to execute it in the partnership name. It appears from the commissioner's report that at the time C. G. Leach purchased Blake's interest in the partnership of Blake & Leach, November 1, 1926, there was owing from said partnership to Sehon-Stevenson & Co. the sum of $3,291.66 and that on the 16th of December, 1926, E. P. Leach paid on said indebtedness the sum of $1,000. This was a little less than 33.327 per centum of said debt, being the percentage

for which he is liable under the Bulk Sales Law as above demonstrated. Decretal judgment should be entered against him for the difference between the amount so paid by him and the portion of said debt for which he is liable as aforesaid, proper interest charges and allowances being taken into account.

Blake cross-assigns error. His first proposition is that E. P. Leach should be held liable with C. G. Leach for all of the indebtedness of Blake & Leach; and the alternative proposition is that under the Bulk Sales Law E. P. Leach should be held liable for approximately 66 per centum of the Blake & Leach indebtedness. The first of these propositions is not well taken, because, as found by the commissioner, the undertaking of E. P. Leach was not an assumption of liability for all of the indebtedness of the firm of Blake & Leach, but only to the extent of $5,800. And the second or alternative proposition is not well taken because under the Bulk Sales Law, E. P. Leach's liability is only "to the extent of the value of the goods, wares, merchandise and fixtures so received by him." Code, c. 74, § 3a. The value of the interest acquired by him was $3,700. As already demonstrated the extent of liability of E. P. Leach under said provision of the statute is 33.327 per centum of the total indebtedness of Blake & Leach.

We are therefore of opinion to reverse the decree of the trial court and remand the cause for further proceedings in compliance herewith.

*Reversed and remanded.*