CARROLL *v.* JONES.

5-3095                                               373 S. W. 2d 132

Opinion delivered December 9, 1963.

*Crouch, Blair & Cypert,* for appellant.

*Thomas Pearson, James R. Hale,* for appellee.

SAM ROBINSON, Associate Justice. Appellant, John J. Carroll, is in the business of selling poultry and livestock equipment. He also sells and erects ''Coldbath'' all steel poultry buildings. On June 14, 1960, appellee, W. K. Jones, purchased from appellant a prefabricated Coldbath chicken house, 40' x 330'. Under the terms of the contract of purchase, hereinafter referred to as the original contract, Carroll was to put the building together on Jones' farm, along with certain poultry equipment. The total contract price was $12,560.00.

After the building was constructed by Carroll and put in operation by Jones, it fell down. At the time Jones had about 7,000 hens in the building, along with poultry equipment, such as nests, water troughs, etc. The hens actually belonged to the Nutrena Company. Jones was

feeding and looking after them for the consideration of $600.00 per month. After the building collapsed the Nutrena Company removed from the premises the chickens that were not killed. Jones' contract with the Nutrena Company was thereby terminated.

Later, Carroll and Jones entered into an agreement whereby Carroll agreed to reconstruct the building. The agreement providing for the reconstruction of the building is as follows: "This agreement made and entered into on this 13th day of February, 1961, by and between John J. Carroll Company, Party of the First Part, and W. K. Jones, Party of the Second Part, is as follows: First Party hereby agrees to reconstruct present metal chicken house to the best of their ability, replacing or repairing all water fountains and automatic feeders and reinstall all wiring and electrical system using present electrical wiring. First Party will use Thrifto Pane plastic in replacing the plastic now in use. Party of the First Part has ninety days to reconstruct said building to the satisfaction of the Party of the Second Part. When job is completed the Party of the First Part will hire an independent engineer to test the strength of the trusses and other parts of the framework as to durability. Each truss is to have 5600 pounds vertical strength. The party of the first part will pay the party of the second part $1,000.00 for damages in loss of contract with Nutrena. After the terms of this agreement have been complied with this will complete full settlement between parties."

Subsequently, Jones filed this suit against Carroll for breach of the original contract, alleging that the contract was partly in writing and partly oral. The Complaint alleges: "At all times mentioned herein the defendant knew the purpose for which said building was to be constructed and used, and as a part of said contract the defendant represented and warranted to the plaintiff that said plans and specifications would be reasonably satisfactory; that all of the materials to be used in the erection and construction of said building would be reasonably satisfactory; that all of the materials to be

used in the erection and construction of said building would be reasonably satisfactory and suitable for the purposes for which they were to be used; and that said building would in all respects be erected and constructed in a reasonably suitable and satisfactory manner." Jones further alleged that Carroll had breached the contract and as a consequence thereof he had been damaged in the sum of $6,221.28. Later the Complaint was amended and there was an allegation of damages in the sum of $11,221.28.

Defendant denied all the allegations of the Complaint and alleged: "That in consideration of any claim for damages on the part of the plaintiff resulting from any equipment or material furnished by the defendant or any construction undertaken by the defendant, the defendant furnished to the plaintiff $1,000.00 in new brooder stoves and equipment, in addition to performing reconstruction work on the building described in the plaintiff's complaint for which the defendant received no pay and which he was under no obligation to do, but did as a consideration on this settlement." Carroll also cross-complained and asked judgment in the sum of $2,183.35 as the unpaid balance on the original contract, and for $1,000.00 alleged to have been paid in the settlement agreement.

Upon a trial to a jury there was a verdict in the sum of $4,000.00 in favor of Jones; a judgment was rendered accordingly. Carroll has appealed.

First appellant contends that the second agreement whereby Carroll undertook to reconstruct the building superseded the original contract, and therefore, Jones can not recover damages sustained by reason of the breach of the original contract by Carroll. Perhaps paragraph 2 of appellant's answer can be construed as setting up the defense of a supplemental agreement superseding the original contract, but the answer is not entirely clear on this point. The terms of the alleged settlement agreement are not set out in the answer, nor is the agreement, which is in writing, made a part of the answer as an exhibit. The answer, in itself, can not be said to be

sufficient to apprise the plaintiff that the defendant was relying on a settlement agreement as a rescission of the original contract.

The original contract was introduced in evidence by the plaintiff. Counsel for the defendant—appellant— specifically stated that he had no objection to its introduction. Appellee Jones was examined extensively both on direct and cross-examination regarding the original contract, including the details of how it was made and how it was breached. Moreover, other than the doubtful language contained in the answer, there is nothing in the record to indicate that appellant was relying on the supplemental agreement as a defense to the suit on the original contract. The case was tried on the question of whether there was a breach of the original contract, and without objection submitted to the jury on that theory.

In connection with this point appellant relies on *Whipple* v. *Baker*, 85 Ark. 439, 108 S. W. 830, but that case is clearly distinguishable from the case at bar. There, it was abundantly clear that, as a complete defense, the defendant relied on a settlement agreement which had been performed with the exception of the payment of a $47.00 item. The court said that the failure to pay the $47.00 did not authorize the appellee to treat the settlement agreement as null and void. Whipple had performed the other parts of the settlement agreement by dismissing a suit, releasing an attachment, cancelling a lease, and allowing Baker the use of a store for a reasonable time, all of which was done prior to the commencement of the suit then before the court. In the case at bar there was no substantial compliance by Carroll with the settlement agreement.

Carroll agreed to reconstruct the building to the satisfaction of Jones. This was not done. When the building was put up the second time there was danger of it falling again, and at his own expense, Jones had to put two rows of posts in the building from end to end. In addition, there were 120 some odd leaks in the roof. There is evidence that it would cost $5,000.00 to repair the roof to the point where it could be warranted not to

leak. The settlement agreement further provides that "when job is completed the party of the first part will hire an independent engineer to test the strength of the trusses and other parts of the framework as to durability. Each truss is to have 5600 pounds of vertical strength". No test was made as provided in the agreement. It is claimed that a test was made somewhere else on some other building, but this is not as the contract agreement provided or contemplated. In fact, it appears that if a test had been made on the building after the reconstruction, but before Jones put in the extra posts, it would have again collapsed.

The agreement further provides that "party of the first part will pay the party of the second part $1,000.00 for damages in loss of contract with Nutrena". The $1,000.00 was not paid. Carroll did, however, furnish additional equipment to the extent of about $700.00. Moreover, according to the terms of the settlement agreement, it was not to become a complete settlement between the parties until it was complied with. It was never complied with. On this point appellant also relies on the cases of Swinton v. Cuffman, 139 Ark. 121, 213 S. W. 409, and Hill-Ingham Lumber Co. v. Neal, 89 Ark. 385, 117 S. W. 247. Both cases are clearly distinguishable on the facts.

Appellant argues that the trial court erred in giving Instruction No. 7, as follows: "You are told that if you find the plaintiff is entitled to recover, by preponderance of the evidence, and that the contract was breached which was entered into on or about the 14th day of June, 1960, or the agreement of the 13th of February, 1961, and that the defendant did not comply with said terms to the satisfaction of the party of the second part as defined by the instructions of the Court in the preceding instruction, you are told that the plaintiff will be entitled to be reimbursed for: (1) Loss of earnings, if any, directly resulting from the breach of the contract. (2) Any repairs made or which you find to be necessary to be made in the future growing out of the breach of the contract. (3) Any damages, if any, to the equipment in the building growing out of a breach of the contract. (4) The

reasonable rental value of the building or any delay, if any, in the completion of construction of said building, growing out of the breach of the agreement, if any.''

In support of his argument on this point appellant cites *Plunkett* v. *Meredith,* 72 Ark. 3, 77 S. W. 600; *Graham* v. *Jonesboro L. C. and E. R. Co.,* 111 Ark. 598, 164 S. W. 729; *Northern Const. Co.* v. *Johnson,* 132 Ark. 528, 201 S. W. 510; *Mitchell & Pumphrey* v. *Caplinger,* 97 Ark. 278, 133 S. W. 1032; *Leifer Mfg. Co.* v. *Gross,* 93 Ark. 277, 124 S. W. 1039. None of these cases cited by appellant is in conflict with the holding in *Hooks Smelting Co.* v. *Planters' Compress Co.,* 72 Ark. 275, 79 S. W. 1052, which is the bellwether case in this state on the question of the measure of damages for breach of contract.

The rule of law applicable here on the measure of damages was announced in the old classic case of *Hadley* v. *Baxendale,* 9 Exch. 341. In the Hooks case, Mr. Justice Riddick pointed out that the first rule laid down in *Hadley* v. *Baxendale* is ''that damages which may fairly and reasonably be considered as naturally arising from the breach of the contract, according to the usual course of things, are always recoverable''. Judge Riddick went on to say that this rule has never been questioned or doubted. In 15 Am. Jur. 442, it is said: ''In accordance with the general principle governing the allowance of damages, a party to a contract who is injured by its breach is entitled to compensation for the injury sustained and is entitled to be placed, in so far as this can be done by money, in the same position he would have occupied if the contract had been performed.'' Dozens of cases are cited in support of the text. Moreover, the Uniform Sales Act regarding a breach of warranty is to the same effect. Ark. Stats. 68-1469, paragraph 6.

Carroll is in the business of selling poultry equipment, including the selling and construction of poultry buildings. It can be fairly inferred from the evidence that he is thoroughly familiar with the needs of those producing poultry, and the natural consequences that would follow the collapse of an all metal building con-

taining about 7,000 hens which the owner of the building was feeding for someone else.

Appellee Jones testified that he sustained damages in the total sum of over $15,000.00. On the proposition of loss of earnings, an exhibit was introduced as part of his testimony which shows that he lost $4,700.00 by reason of losing the Nutrena contract. There is evidence that such loss grew out of the collapse of the building. He had been receiving about $600.00 per month from Nutrena before the building fell down. The exhibit shows in detail the expense incurred in repairing the building after it was reconstructed to keep it from falling down the second time; it shows that reasonable rent on the building for two months while it was being reconstructed was $600.00, and it shows in detail the damages to the poultry equipment caused by the falling of the building. We cannot say as a matter of law that any of the items of damages mentioned was not the direct and natural result of the breach of contract.

The trial court refused to give appellant's Instruction No. 3, as follows: "You are instructed that if you find by a preponderance of the evidence that the plaintiff failed to pay the defendant a part of the purchase price of the equipment and building, then you will find the defendant entitled to recover from the plaintiff on his counterclaim that portion of the original purchase price which remains unpaid." The instruction did not take into consideration the evidence of the defendant having breached the contract, and the theory of breach of contract on which the case was tried; hence, there was no error in the court's refusal to give it.

Appellant also argues that the trial court erred in admitting testimony given by Jones regarding the damages he sustained. Jones had prepared a list specifically detailing the damages and the amount of each item. It was stipulated by the parties that he would testify to these items as shown by the exhibit, and the exhibit was introduced in evidence. Appellant objected to it on the ground that it was not relevant or competent, not as to the manner in which the evidence was introduced. The

evidence of the damages appellee sustained was entirely relevant, competent and material. It was, therefore, admissible.

Appellant also complains of the court not having submitted to the jury a form of verdict pertaining to the balance owed by appellee on the original contract, as alleged in the cross-complaint. When the court properly refused to give appellant's instruction No. 3, and appellant failed to ask for a valid instruction in lieu thereof, the jury was left in the dark as to the circumstances in which a verdict could be rendered on the counterclaim. It could have been confusing to the jury to have a form of verdict regarding a counterclaim without having been instructed by the court on the law applicable to such claim. In the circumstances the appellant should have reduced to writing the form of verdict requested. This was not done.

Appellant argues other points, but what we have said covers all the issues raised on appeal.

We find no error. The judgment is affirmed.